**BOARD OF TRADE of the CITY OF CHICAGO, Plaintiff-Appellee,**

v.

**COMMODITY FUTURES TRADING COMMISSION, Defendant-Appellant.**

**Nos. 82–1683, 82–1952.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1982.

Decided April 4, 1983.

Kenneth M. Raisler, Commodity Futures Trading Com'n, Washington, D.C., for defendant-appellant.

John E. Angle, Kirkland & Ellis, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, ESCHBACH, Circuit Judge, and SWYGERT, Senior Circuit Judge.

CUMMINGS, Chief Judge.

This appeal involves a suit by the Board of Trade of the City of Chicago ("Board of Trade") against the Commodity Futures Trading Commission ("the Commission") for a declaratory judgment that a rule promulgated by the Commission is void and for a permanent injunction enjoining the Commission from enforcing that rule. The district court granted summary judgment in favor of the Board of Trade and the Commission has appealed.

The Commission is an independent federal agency established pursuant to the Commodity Exchange Act ("the Act"), 42 Stat. 998, 7 U.S.C. § 1 et seq. (1976). The Act regulates futures contracting on boards of trade, defined as "exchange[s] or association[s] * * * of persons engaged in the business of buying or selling any commodity or receiving the same for sale or consignment." 7 U.S.C. § 2. The Act empowers the Commission to designate as "contract markets" boards of trade that satisfy certain requirements. That designation car-

ries with it certain privileges and duties. One of the duties imposed by Section 5a(11) upon contract markets is the duty to:

provide a fair and equitable procedure through arbitration or otherwise (such as by delegation to a registered futures association having rules providing for such procedures) for the settlement of customers' claims and grievances against any member or employee thereof: Provided, That (i) the use of such procedure by a customer shall be voluntary and (ii) the term "customer" as used in this paragraph shall not include another member of the contract market.

7 U.S.C. § 7a(11). The Act also vests the Commission with legislative power. Section 8a(5) vests the Commission with general rule-making authority:

§ 8a The Commission is authorized—

\* \* \* \* \* \*

(5) to make and promulgate such rules and regulations as, in the judgment of the Commission, are reasonably necessary to effectuate any of the provisions or to accomplish any of the purposes of this chapter.

7 U.S.C. § 12a(5). Section 8a(7) makes explicit that the Commission's general power to promulgate rules includes the power to void or amend rules by which contract markets govern themselves:

§ 8a The Commission is authorized—

\* \* \* \* \* \*

(7) to alter or supplement the rules of a contract market insofar as necessary or appropriate by rule or regulation or by order, if the Commission determines that \* \* \* such changes are necessary or appropriate for the protection of traders or to insure fair dealing in commodities traded for future delivery on such contract market.

7 U.S.C. § 12a(7).

The Board of Trade is a designated "contract market." In early 1977, the Board of Trade submitted to the Commission for its approval a proposed regulation providing for arbitration of customers' claims against its members and employees. The regula-

tion established an arbitration procedure but it did not give customers the right to have their claims arbitrated. Customers could arbitrate their claims against an employee or member only if the employee or member agreed to arbitration. The Commission asked the Board of Trade to amend this rule to require that its members and employees submit to arbitration when their customers request it. After the Board refused, the Commission disapproved the Board's proposed regulation and issued an amended regulation that requires arbitration of any customer claim or grievance worth less than $15,000 against any member or employee upon request by the customer. This regulation, which became effective on December 24, 1981, provides in pertinent part:

"§ 7.201 Regulation 620.01(B).

"**Customers' Claims and Grievances.** The Arbitration Committee and Mixed Panels constituted pursuant to Regulation 620.02 have jurisdiction to arbitrate all customers' claims and grievances not in excess of $15,000 against any member or employee thereof which have arisen prior to the date the customer's claim is asserted. If the customer elects to initiate an arbitration proceeding of any customer claim or grievance, the member shall submit to arbitration in accordance with these Arbitration Rules and Regulations \* \* \*." (Regulation 620.01(B), 17 C.F.R. Part 7 § 7.201 (1982); 46 Fed.Reg. 57464.)

The day before the Commission's rule became effective, the Board of Trade commenced this action by filing suit in district court. The Board charged that the Commission's rule was void under both the Commodity Exchange Act and the Constitution. The Board claimed that the Commission acted arbitrarily and capriciously when it issued the rule on the ground that Section 5a(11) of the Act, *supra*, does not impose upon members of contract markets a duty to arbitrate claims by customers. The Board also claimed that the Commission's rule violates the Seventh Amendment because it denies members of contract mar-

kets the right to a jury trial of customers' common-law claims against them. As stated earlier, the Board sought a declaratory judgment that the rule is invalid and a permanent injunction enjoining the Commission from enforcing it. Both parties moved for summary judgment; the district court granted summary judgment in favor of the Board of Trade, holding that the Commission's rule is unconstitutional because it compels arbitration of common-law claims contrary to the Seventh Amendment and permanently enjoining the Board from enforcing it against the Board of Trade and its members and employees. Because we find that neither claim by the Board of Trade is ripe for adjudication, we reverse.

■ Whether a suit challenging the validity of an administrative rule is ripe for adjudication if the rule has yet to be enforced depends upon two factors: "[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681; *Bethlehem Steel Corp. v. United States Environmental Protection Agency,* 536 F.2d 156, 160 (7th Cir.1976). An administrative rule that has yet to be enforced might not be final; the agency that promulgated it might not yet have decided whether and when to enforce it. *Toilet Goods Association, Inc. v. Gardner,* 387 U.S. 158, 163, 87 S.Ct. 1520, 1524, 18 L.Ed.2d 697. If so, a court that considers whether the rule is valid runs the risk of prematurely involving itself in the decision-making process of another branch of government. *Abbott Laboratories,* 387 U.S. at 148, 87 S.Ct. at 1515. The rule might be final but broad in scope; it might govern a wide array of situations, and whether it is valid might depend upon the particular facts of each situation. If so, a court that reviews the rule without some particular set of facts before it runs the risk of rendering an unnecessary or inadequately informed decision. *Illinois v. General Electric Co.,* 683 F.2d 206, 210 (7th Cir.1982). Federal courts will dismiss as unripe a pre-enforcement challenge to an administrative rule when these risks are of greater concern than the hardship the parties are likely to suffer if judicial review is denied.

■ Whether the Seventh Amendment guarantees members and employees of the Board of Trade the right to have a customer's claim against them tried before a jury depends upon the nature of the claim, the kinds of rights the customer asserts and the type of relief the customer requests. *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729; *SEC v. Commonwealth Chemical Securities, Inc.,* 574 F.2d 90 (2d Cir. 1978). We cannot say whether members and employees of the Board of Trade have a right to a jury trial of customers' sub-$15,-000 claims against them because no such claims are before us. The Board argues that it is irrelevant that we lack the kind of information necessary to decide whether a Seventh Amendment jury trial right attaches to a customer's claim because sooner or later some one of its members or employees will be required to arbitrate a claim to which such a right attaches. The Board asserts that this threat of future enforcement makes its present suit ripe for adjudication.

We disagree. In the first place, neither the Board of Trade nor any of its members or employees is suffering any present harm merely because the Commission may apply its rule unconstitutionally at some time in the future. *Toilet Goods,* 387 U.S. at 164, 87 S.Ct. at 1524; *Nuclear Engineering Co. v. Scott,* 660 F.2d 241, 252 (7th Cir.1981); *Commonwealth Edison Co. v. Train,* 649 F.2d 481, 485 (7th Cir.1980); *Bethlehem Steel,* 536 F.2d at 163. The Board's claim is thus analogous to that rejected by the Supreme Court in *Board of Trade of the City of Chicago v. Olsen,* 262 U.S. 1, 43 S.Ct. 470, 67 L.Ed. 839. There the Supreme Court rejected on ripeness grounds an attack on the Grain Futures Act of 1922. Section 6(b) of that Act (42 Stat. 998, 1002) gave a commission (composed of the Secretaries of Agriculture and Commerce and the Attorney General) power to exclude from all contract markets any person violating the Act or regulations thereunder. The plain-

tiffs (Board of Trade and some of its members) attacked Section 6(b) because a jury trial was not afforded. Speaking for the Court, Chief Justice Taft held that it would be improper to consider the validity of Section 6(b) for the following reasons (262 U.S. at 43, 43 S.Ct. at 479):

> The plaintiffs do not aver that they are committing acts which will subject them to such exclusion, or that charges have been made and proceedings have been begun or are about to be begun against them by the Secretary of Agriculture. Until they are thus in danger of suffering prejudice from the operation of the paragraph, they cannot invoke our decision as to its validity.

*Accord, Babbitt v. United Farm Workers,* 442 U.S. 289, 305, 99 S.Ct. 2301, 2312, 60 L.Ed.2d 895.

Under Sections 6b and 5b of the Commodity Exchange Act (7 U.S.C. §§ 13a and 7b), the Commission may, after an administrative hearing, impose sanctions upon the Board if it refuses to comply with Rule 7.201—fines of up to $100,000 and suspension of designation as a contract market. The possibility of being penalized in the future for refusing to require that a member arbitrate a customer's claim might make the Board a bit reluctant to assert what it believes to be the Seventh Amendment right of its members. But any such reluctance has no bearing upon the day-to-day operations of the Board. *Toilet Goods,* 387 U.S. at 164, 87 S.Ct. at 1524; *Bethlehem Steel,* 536 F.2d at 163. Moreover, the Board need not flout the rule in order to challenge its validity. A member or employee ordered by the Board or the Commission to arbitrate under Rule 7.201 could simply bring a suit to enjoin arbitration or to enjoin enforcement of an arbitration award against him on the ground that the Commission's rule requiring arbitration is invalid.

Second, because a specific factual context is required before a court can decide whether a right to a jury trial exists, it is quite possible that a ruling now in favor of the Board would not eliminate the threat of unlawful enforcement of the Commission's rule. See *Illinois v. United States Environmental Protection Agency,* 621 F.2d 259, 262 (7th Cir.1980). The Commission might simply amend its present rule to provide for mandatory arbitration of all customer claims not triable before a jury and members and employees of the Board might be in no better position than they are now. The Board and the Commission might disagree over whether a customer's claim would be triable before a jury at common law and each such disagreement might result in another lawsuit in federal court. We cannot now identify every possible customer claim and decide on some hypothetical set of facts whether the Seventh Amendment guarantees members and employees the right to have that claim tried before a jury.

█ Third, however likely it may appear now that the Commission will apply Rule 7.201 to every conceivable customer claim, it is possible that when those claims finally arise, the Commission will choose not to apply its rule. "A statute [rule], on its face, accomplishes nothing. It must be given life by those charged with its enforcement." *Planned Parenthood Association v. Kempiners,* 700 F.2d 1115, 1133 (7th Cir.1982) (Eschbach, J.). Thus it is possible that we might never need to decide the constitutionality of Rule 7.201. It is a rule of long standing that federal courts should never decide questions of constitutional law "in advance of strictest necessity." *Parker v. County of Los Angeles,* 338 U.S. 327, 333, 70 S.Ct. 161, 163, 94 L.Ed. 144; *Kempiners, supra* at 1131 (quoting *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524).

█ The Board of Trade's contention that the Commission's issuance of Rule 7.201 was arbitrary and capricious is unripe for the same reasons as its constitutional contention. The Commission is authorized to issue rules "necessary or appropriate" to protect traders and insure fair dealing in commodity futures. Section 8a(7) *supra.* Whether Rule 7.201 is arbitrary depends upon whether there is any reasonable basis

for supposing that requiring arbitration of customer claims promotes those statutory aims. Because factors such as the kind and number of claims required to be arbitrated will have a bearing upon that question, a court is in a much better position to decide whether the Commission acted arbitrarily when all of the facts surrounding a specific instance of enforcement by the Commission are before it. *Toilet Goods,* 387 U.S. at 163–164, 87 S.Ct. at 1524. Since the threat of future enforcement is causing the Board and its members no immediate harm, nothing is lost by foregoing judicial review of the Board's claim until such an instance occurs. See *In Re: Chicago, Milwaukee, St. Paul and Pacific Railroad Company,* 701 F.2d 604, 609–610 (7th Cir.1983); *General Finance Corp. v. Federal Trade Commission,* 700 F.2d 366, 371–372 (7th Cir.1983).

The Board of Trade seems to suggest two reasons why its claim that the Commission acted arbitrarily is ripe for adjudication. First, it argues that the Commission did not exercise its legislative power under Section 8a when it issued Rule 7.201. The Board claims that Rule 7.201 is nothing more than an erroneous interpretation of Section 5a(11) of the Commodity Exchange Act, *supra,* that the Commission must have intended to require no more than Section 5a(11) requires when it issued Rule 7.201 (Br. 17–18). We disagree. The Commission not only believed when it issued Rule 7.201 that Congress intended to compel arbitration by members and employees when it enacted Section 5a(11), see 46 Fed.Reg. 57,-458 (Nov. 24, 1981) ("the Commission believes that section 5a(11) of the Act was intended by Congress to require member participation in exchange arbitration proceedings * * *."), but the Commission also believed that a mandatory arbitration rule was necessary to effectuate the purposes underlying Section 5a(11). See the Board's explanations reproduced in 46 Fed.Reg. 3,028 (Jan. 13, 1981) (not requiring members to arbitrate "may * * * be contrary to the public interest."); *id.* ("These requirements [of Section 5a(11)] would be meaningless and of no effect if exchanges did not require contract market members to participate in arbitration proceedings initiated by customers."); *id.* ("the Commission will, pursuant to Section 8a(7) of the Act, consider whether it would be necessary or appropriate to alter or supplement the Exchange's [Board of Trade's] rules relating to arbitration with respect to requiring members to submit to arbitration proceedings invoked by customers to protect persons trading, and to insure fair dealing, in commodities * * *."); 46 Fed.Reg. 57,458 (Nov. 24, 1981) ("the Commission believes that * * the statutory provision would be without meaning if contract markets did not provide customers with the right to obtain settlements through arbitration proceedings of claims and grievances against exchange members and employees thereof.").[1] Sections 8a(5) and (7), *supra,* give force of law to rational attempts by the Commission to give meaning and effect to Section 5a(11).

Second, the Board of Trade argues that its claim that Rule 7.201 is void is ripe for adjudication because Section 5a(11) precludes the Commission from issuing a rule that compels members and employees to arbitrate customer claims against them. The Board relies upon a subsection of Section 5a(11) that was in effect when this appeal was briefed and argued (Br. 19–20). That subsection provides that:

> (iii) the [arbitration] procedure shall not result in any compulsory payment except as agreed upon between the parties.

7 U.S.C. § 7a(11)(iii). The Board asserts that if members and employees are required to arbitrate customer claims, any resulting awards against them will qualify as "compulsory payments." Unfortunately for the Board's argument, Congress repealed this subsection when it enacted the Futures Trading Act of 1982, Pub.L. No. 97–444, 128

---

1. These excerpts from the Federal Register are the Commission's explanations of its proposed arbitration rules.

Cong.Rec.H. 9579 (daily ed. Dec. 13, 1982).[2] That Act became effective on January 11, 1983. There is thus nothing in Section 5a(11) as it now reads that can be construed to prohibit the Commission from adopting Rule 7.201.

The judgment below is reversed with directions to grant the Commission's cross-motion for summary judgment.

---

**2.** The Futures Trading Act also repealed another subsection that had set a $15,000 limit on the size of customer claims to be resolved through arbitration.