CITIZENS FOR A BETTER ENVIRONMENT, etc., and Martin Wojcik, Plaintiffs,

v.

Douglas M. COSTLE, Administrator, United States Environmental Protection Agency, et al., Defendant.

INLAND STEEL COMPANY, et al., Plaintiffs,

v.

Douglas M. COSTLE, etc., et al., Defendants.

PEOPLE OF the STATE OF ILLINOIS, et al., Plaintiffs,

v.

Douglas M. COSTLE, etc., et al., Defendants.

No. 80 C 0003.

United States District Court, N.D. Illinois, E.D.

May 16, 1985.

Robert E. Yuhnke, Boulder, Colo., for plaintiffs.

Scott Slaughter, Richard Bozof and F. Henry Habicht III, Dept. of Justice, Washington, D.C., for defendants.

John M. Cannon and Susan W. Wanat, Mid-America Legal Foundation, Chicago, Ill., for intervenor defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiffs, Citizens for a Better Environment and Martin Wojcik, a citizen and resident of Illinois (hereinafter collectively referred to as "CBE"), have filed this action under section 304(a)(2) of the Clean Air Act, 42 U.S.C. § 7604(a)(2), against defendants William D. Ruckelshaus, the Administrator of the United States Environmental Protection Agency ("EPA") and Valdas V. Adamkus, EPA's Regional Administrator for Region V. CBE has moved for clarification and for reconsideration of this court's memorandum and order of December 27, 1983, dismissing count I for lack of subject matter jurisdiction. In count I CBE claimed, *inter alia,* that the EPA failed to perform a nondiscretionary duty under the Clean Air Act (the "Act") by failing to promulgate regulations to remedy a deficiency the EPA found in Illinois' implementation plan. CBE now seeks an order compelling the EPA to perform its non-discretionary duty pursuant to section

110(c)(1)(B) of the Act, 42 U.S.C. § 7410(c)(1)(B).

## I. BACKGROUND

### A. Statutory Background

The primary goal of the Clean Air Act is to protect the public's health. Clean Air Act § 101(b)(1), 42 U.S.C. § 7401(b)(1). The Act places the responsibility for achieving this goal on both federal and state governments. Due to the states' failure to adequately respond to the problem of air pollution, however, Congress has increasingly placed greater reliance on the federal government to ensure the states' compliance. *See, e.g., Union Electric Co. v. EPA*, 427 U.S. 246, 249, 96 S.Ct. 2518, 2522, 49 L.Ed.2d 474, *reh'g denied*, 429 U.S. 873, 97 S.Ct. 189, 50 L.Ed.2d 154 (1976).

Accordingly, the Act required the EPA to adopt "national primary ambient air quality standards," and the states to adopt "state implementation plans" ("SIPs") designed to attain those standards by 1975. Nevertheless, many states failed to attain those standards, *see* 123 Cong.Rec. 18015 (1977) (statement of Act's chief sponsor, Senator Muskie), and so Congress amended the Act in 1977. *See* Clean Air Act Amendments of 1977, Pub.L. No. 95–95, 91 Stat. 685 (1977). The 1977 Amendments added a new section, part D, for those states with "non-attainment areas." Part D requires each state to revise its SIP for these non-attainment areas and section 172 of part D specifies the provisions required in the revised plans. Clean Air Act § 172(a)(1), (b)(1)–(10), 42 U.S.C. § 7502(a)(1), (b)(1)–(10). Section 172(a)(1) requires that the revised plan "provide for attainment" of the national primary standards "not later than December 31, 1982," 42 U.S.C. § 7502(a)(1), and section 110(a)(2)(I) subjects states to a construction ban for failing to revise their SIPs. 42 U.S.C. § 7410(a)(2)(I). Moreover, section 110(c)(1)(A–B) provides that

> "[t]he Administrator *shall ... promptly* prepare and publish proposed regulations setting forth an implementation plan, *or any portion thereof,* for a State if—
>
> (A) the State fails to submit an implementation plan which meets the requirements of this section, [or] ·
>
> (B) the plan, *or any portion thereof* ... is determined by the Administrator not to be in accordance with the requirements of this section....

42 U.S.C. § 7410(c)(1)(A–B) (emphasis added).

Judicial review of the Administrator's actions (*e.g.,* to adopt an SIP, to promulgate federal regulations, etc.), must be had in the courts of appeals. Clean Air Act § 307(b)(1), 42 U.S.C. § 7607(b)(1). Section 307(b)(1) provides, in pertinent part, that "review of the Administrator's action in approving or promulgating any implementation plan ... or any other final action of the Administrator ... may be filed only in the United States Court of Appeals for the appropriate circuit." 42 U.S.C. § 7607(b)(1). To remedy any action which after review the Court of Appeals finds arbitrary and capricious, section 307(d)(9) provides only that "the court may reverse any such action...."[1] 42 U.S.C. § 7607(d)(9).

An order compelling the Administrator to perform a non-discretionary duty under the Act, however, must be had in the district courts. Clean Air Act § 304(a), 42 U.S.C. § 7604(a). Section 304(a) provides, in pertinent part, that

> any person may commence a civil action ... (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under

---

**1.** Section 307(d)(9) of the Clean Air Act deviates from its model, the Administrative Procedure Act, which provides that "the reviewing court shall ... compel agency action unlawfully withheld." 5 U.S.C. § 706. Instead, Congress provided the district courts with jurisdiction to compel agency action pursuant to section 304 of the Clean Air Act. 42 U.S.C. § 7604. In addition, Congress made clear that section 706 of the APA is not to apply to actions reviewed pursuant to section 307(d)(1) of the Clean Air Act by specifically providing that "section 706 of title 5 shall not, except as expressly provided in this subsection, apply to actions to which this subsection applies. 42 U.S.C. § 7607(d)(1).

this chapter which is not discretionary with the Administrator.... The district courts shall have jurisdiction ... to ... order the Administrator to perform such act or duty....[2]

42 U.S.C. § 7604(a). *See e.g., Council of Commuter Organizations v. Metropolitan Transportation Authority,* 683 F.2d 663, 665 (2d Cir.1982).

### B. Factual Background

Illinois was one of those states which failed to obtain the national primary standards, despite the existence of its approved SIP. Thus, pursuant to section 172, Illinois submitted a draft version of its revised plan on April 3, 1979, three months after the statutorily-mandated submittal date. Section 110(c)(1) requires federal rulemaking within six months of the submission if the Administrator finds that the SIP, or any portion of it, fails to satisfy the Act's requirements. 42 U.S.C. § 7410(c)(1).

By January 8, 1980, the EPA had made no final decision regarding the sufficiency of Illinois' SIP, nor had the EPA proposed federal rulemaking. CBE thus filed this action in federal district court and, in count I, sought to compel federal rulemaking under section 304(a)(2), 42 U.S.C. § 7604(a)(2). The EPA moved to dismiss CBE's complaint for lack of subject matter jurisdiction, but that motion was denied in *Citizens for a Better Environment v. Costle,* 515 F.Supp. 264 (N.D.Ill.1981) ("CBE I"). In *CBE I* this court found that "the states and the public are entitled to prompt EPA rulemaking to remedy any nonconforming provisions of the states' submissions. And ... the duty to promulgate promptly federal rules is not discretionary under section 110(c)(1) and may be enforced pursuant to a 'citizens suit' in district court." *CBE I* at 277.

Subsequent to this court's decision in *CBE I,* the EPA published a notice of final rulemaking with respect to the Illinois SIP. 46 Fed.Reg. 44172, *et seq.* (Sept. 3, 1981).

In that notice, the EPA approved, conditionally approved and disapproved specific portions of the SIP. The importance of that rulemaking for purposes of the instant action lies in the EPA's disapproval of the regulation establishing a limitation on the emission of particulate matter from byproduct coke plant pushing operations. 46 Fed.Reg. 44178 (Sept. 3, 1981) (*codified* at 40 C.F.R. § 52.725(b)(2) (1984)).

Following the EPA's September 1981 action, CBE filed a petition for review of the EPA's decision to conditionally approve the Illinois SIP in the Seventh Circuit Court of Appeals, pursuant to section 307. 42 U.S.C. § 7607. CBE did not, however, seek review of the EPA's decision to disapprove Illinois' regulation controlling emissions from coke plant pushing operations. Instead, CBE sought an order from this court, under section 304, compelling the Administrator to perform his non-discretionary duty to propose federal rulemaking for those portions of Illinois' SIP which the Administrator disapproved. Moreover, CBE challenged, in this court, EPA's use of "conditional approvals," claiming that this was merely a device by which the EPA could avoid its responsibilities under the Act.

On December 27, 1983, this court dismissed count I in *Citizens for a Better Environment v. Costle,* No. 80 C 0003 (N.D.Ill. Dec. 27, 1983) ("CBE II"). In *CBE II* this court was concerned with the possibility of disrupting the administrative process. *CBE II,* at 8. The EPA had conditionally approved Illinois' SIP by determining that many provisions of the SIP did not conform to the Act's requirements. Thus, the EPA had not approved or disapproved of these provisions. Although the Act does not specifically provide for conditional approvals, this court determined that review of the propriety of such action was properly before the Seventh Circuit Court of Appeals. Consequently, this court declined to exercise its questionable jurisdic-

---

**2.** This is consistent with the jurisdiction conferred upon the district courts pursuant to the Mandamus and Venue Act, 28 U.S.C. § 1361.

tion to order the EPA to promulgate federal regulations when it was unclear whether the EPA actually had a non-discretionary duty to act in that situation. Had the EPA disapproved the provisions, its non-discretionary duty to begin federal rulemaking would have been clear. The EPA had merely conditionally approved much of the SIP, however, and this court therefore dismissed count I for lack of subject matter jurisdiction.

Although the EPA had specifically disapproved several Illinois regulations as well, it had subsequently proposed to reverse this action. 47 Fed.Reg. 53000 *et seq.* (Nov. 24, 1982). At the time *CBE II* was decided, no final action had been taken regarding that proposed rulemaking. *CBE II*, at 7. This court correctly decided not to interfere in the ongoing administrative process. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *Bethlehem Steel Corp. v. U.S.E.P.A.*, 536 F.2d 156, 161 (7th Cir.1976). An order compelling the Administrator to promulgate federal regulations would have preempted the Administrator's discretionary authority to determine whether the regulations should be finally disapproved or whether the disapproval should be reversed. *See CBE I*, 515 F.Supp. 264, 274 (N.D.Ill.1981). *See also Kennecott Copper Corp., Nevada Mines Div. v. Costle*, 572 F.2d 1349, 1355 (9th Cir.1978).

The EPA has now exercised its discretion regarding each of the initial disapprovals of September 3, 1981. Three of the disapprovals were reversed. 48 Fed.Reg. 45245 (Oct. 4, 1983). The EPA's initial disapproval of Illinois' regulation controlling emissions from coke plant pushing operations was not, however, reversed. Since the EPA has taken no other action to reverse this final disapproval, it can be concluded that the EPA has exercised its discretion and determined that the regulation does not meet the Act's requirements. CBE, therefore, has moved to have this court reconsider its complete dismissal of count I in *CBE II* and to order the EPA to promulgate federal regulations as a substitute for the disapproved Illinois regulation, pursu-

ant to section 110(c)(1)(B). 42 U.S.C. § 7410(c)(1)(B). CBE argues that disapproval triggers the EPA's non-discretionary duty and therefore jurisdiction to order the EPA to act lies in the district court pursuant to section 7604. The EPA argues that jurisdiction lies in the court of appeals because the plan, as a whole, has been conditionally approved and therefore does not give rise to any non-discretionary duty. Industry intervenors agree with the EPA that jurisdiction lies in the court of appeals. Their argument, however, is based solely on the fact that the propriety of the disapproval is now pending review by the United States Court of Appeals for the Seventh Circuit in an action filed by the industry intervenors. *See* Supplemental Response of Steel Company Intervenor-Defendants (filed Oct. 17, 1984) at 1–2.

## II. DISCUSSION

"[T]he EPA has the power to partially approve revised as well as original plans submitted by the state." *Bethlehem Steel Corp. v. Gorsuch*, 742 F.2d 1028, 1034 (7th Cir.1984). *See also* Clean Air Act § 110(a)(2), 42 U.S.C. § 7410(a)(2) ("Administrator shall ... approve or disapprove such plan, or any portion thereof."). It follows therefore that the EPA can partially disapprove revised plans.

The EPA conditionally approved Illinois' revised implementation plan and set forth conditions which would have to be met before the plan could be approved. *See* 46 Fed.Reg. 44172 (Sept. 3, 1981). Illinois' implementation plan was partially disapproved, however, since the EPA specifically disapproved several of the plan's provisions, including the coke plant pushing regulation, which is the subject of this action. The EPA determined that these provisions failed to meet the Act's requirements, in section 172(b)(3), 42 U.S.C. § 7502(b)(3), of reasonably available control technology.

The EPA argues that the coke plant pushing rule was not actually disapproved but was conditionally approved along with the remainder of Illinois' plan. *See* Federal

Defendants' Response (filed Sept. 17, 1984) at 3. The EPA's actions, however, appear to contradict its argument. The EPA gives separate and distinct meanings to the actions of "disapproval" and "conditional approval." *See* 46 Fed.Reg. 44177 (Sept. 3, 1981).[3] Here the EPA initially classified its action regarding the coke plant pushing rule as a "disapproval." 46 Fed.Reg. 44178 (Sept. 3, 1981). Moreover, the EPA proposed to reconsider the specific disapproved provisions, thereby treating these disapprovals as separate from those provisions conditionally approved. Despite this proposed change the EPA determined that the coke plant pushing rule should remain disapproved while the status of the other disapproved provisions was changed. 48 Fed.Reg. 45245–46 (October 4, 1983). In addition, the EPA's actions are consistent with the language of the Act which specifically provides that "[t]he Administrator shall ... approve or disapprove such plan, or any portion thereof." Clean Air Act § 110(a)(2), 42 U.S.C. § 7410(a)(2).

■ The Act requires the EPA to promulgate federal regulations whenever the EPA determines that "an implementation plan, or portion thereof" does not comply with the Act's requirements. Clean Air Act § 110(c)(1)(B), 42 U.S.C. § 7410(c)(1)(B). "This is the remedy Congress foresaw for state inaction or ineffectiveness," *Sierra Club v. Indiana-Kentucky Electric Corp.*, 716 F.2d 1145, 1153 (7th Cir.1983), and this remedy is not left to the EPA's discretion. *CBE I*, 515 F.Supp. 264, 277 (N.D.Ill.1981). The EPA has disapproved Illinois' coke plant pushing rule because the rule does not comply with the Act's requirements and, therefore, "the intended remedy is for the EPA to act." *Sierra Club*, 716 F.2d at 1153. Even if the EPA had conditionally approved this regulation, it must also act where the state was given the opportunity to correct the deficiency, yet failed to do so. *See Connecticut Fund for the Environment v. EPA*, 672 F.2d 998 (2d Cir.)

*cert. denied*, 459 U.S. 1035, 103 S.Ct. 445, 74 L.Ed.2d 601 (1982). Here the regulation was disapproved on September 3, 1981. The Act's deadline for attainment, December 31, 1982, has come and gone, and still, in May 1985, the deficiency has yet to be remedied. The Act now requires the EPA to promulgate federal regulations.

Congress designed the Act's citizen suit provision, Clean Air Act § 304, 42 U.S.C. § 7604, to "enable citizens to bring suit ... to enforce ... requirements of the Act." H.R.Rep. No. 1742, 94th Cong., 2d Sess. 115 (1976). Section 304 uses mandamus, as opposed to review, language to give the district courts jurisdiction in citizen suits to compel the EPA to act. Section 307 gives courts of appeals jurisdiction to review and, if necessary, to reverse the EPA's actions. Unfortunately, the distinction between "the failure to act and the failure to act properly" is not always clear. *See* 41 Fed.Reg. 56, 768 (1976) (Recommendation 76–4).

■ To clarify an ambiguous statute a court must first look to Congress' intent. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, — U.S. —, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694, *reh'g denied*, — U.S. —, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984). Congress, however, was silent with respect to this issue, although the potential problem was raised by the Administrative Conference of the United States during a hearing regarding the Clean Air Act Amendments of 1977. *See* Clean Air Act Amendments of 1977: Hearing Before the Subcommittee on Environmental Pollution and Public Works, 95th Cong., 1st Sess. 249 (1977). The Administrative Conference recommended that "actions to compel or postpone the issuance of regulations whose validity would properly be determined in a court of appeals" be heard exclusively by the court of appeals. *Id.* Congress took no action with respect to this recommendation.

---

**3.** In its notice of final rulemaking on the revisions to Illinois' SIP, the EPA separated the summary of its action into four distinct categories: (1) approval and effected sources; (2) conditional approval; (3) disapproval; and (4) no action. The coke plant pushing rule was listed in the "disapproval" category. *See* 46 Fed.Reg. 44177 (Sept. 3, 1981).

In the absence of specific congressional intent the court must interpret the statute to resolve ambiguities. The issue here is whether the district court should exercise its jurisdiction to compel the EPA to perform its non-discretionary duty to promulgate a federal regulation to replace a disapproved state regulation, in light of the fact that a petition to review the EPA's disapproval has been filed in the court of appeals. This specific issue has never been addressed by this or (to the court's knowledge) any other court. The court faced a similar issue in *City of Highland Park v. Train,* 374 F.Supp. 758 (N.D.Ill.1974), *aff'd* 519 F.2d 681 (7th Cir.1975), *cert. denied* 424 U.S. 927, 96 S.Ct. 1141, 47 L.Ed.2d 337 (1976), but was able to avoid addressing the issue when it found that plaintiff had failed to comply with the Act's filing requirements. *Id.* at 767. Recently, however, a similar issue was addressed in *Indiana & Michigan Electric Co. v. U.S.E.P.A.,* 733 F.2d 489 (7th Cir.1984). In *Indiana & Michigan Electric* the EPA had approved Indiana's revised SIP while it simultaneously announced that it was taking no action regarding one provision of the SIP. A utility company promptly sought review of the EPA's decision to approve the plan and review of its decision to withhold action regarding one of the plan's provisions.

The EPA argued that the district court had jurisdiction over the EPA's alleged failure to act, but the court of appeals disagreed. The court found that district courts were given jurisdiction over "agency-inaction" cases because those courts are equipped to develop a record. In *Indiana Michigan Electric,* however, the EPA's decision not to take action was set forth in the rulemaking record and thus the problem of developing a record for review was not a concern. 733 F.2d 489, 490–91 (7th Cir.1984). The court, therefore, held that "judicial review of an EPA order approving or promulgating, in whole or part, a state implementation plan, original or revised, lies in the courts of appeals under section 307 even when the challenge to the order includes a contention that the EPA failed to do something it had no discretion not to do." *Id.* at 491.

The court clearly stated that "[t]he utilities are not asking that the EPA be ordered to act on the [specific provision]. They are asking that the EPA's order adopting the revised plan without the provision be set aside. That is section 307 relief." *Id.* CBE, on the other hand, seeks section 304 relief. CBE does not seek judicial review of the EPA's decision to disapprove the coke plant pushing rule. CBE, in fact, agrees that the rule should be disapproved since it fails to meet the Act's requirements.

It is the industry intervenors that seek review of the disapproval in this case. Industry intervenors seek to have this disapproval set aside so that the coke plant pushing rule promulgated by Illinois will be put into effect. CBE, on the other hand, seeks promulgation of a federal rule which meets the Act's requirements.

Thus, the actions before the court of appeals and before the district court are not identical. In the court of appeals the industry intervenors seek review and reversal of the EPA's disapproval of the coke operations pushing rule. In the district court CBE seeks the court to compel the EPA to fill the gap left by its disapproval. Therefore, the concern in *Indiana & Michigan Electric* with needlessly adding "another layer to the review process" is not present in this case.[4] *Id.* at 491.

In addition, limited judicial resources will not be expended unnecessarily and there is no risk of inconsistent decisionmaking if this court exercises its jurisdiction. To illustrate, the court of appeals may act in

4. Similarly, this case is to be distinguished from those in which petitioners seek simultaneous review in both the district court and the court of appeals, *see e.g., Oljato Chapter of Navajo Tribe v. Train,* 515 F.2d 654 (D.C.Cir.1975), *Center of Auto Safety v. EPA,* 558 F.Supp. 103 (D.C.Cir. 1983), because "the Administrator act[ed], but in view of the challengers [has not] act[ed] far enough." *Oljato Chapter of Navajo Tribe,* at 661, n. 9 (D.C.Cir.1975). Here CBE is content with the EPA's disapproval.

one of three ways: dismiss the pending review, affirm the EPA's disapproval, or find the disapproval arbitrary and capricious.

It is possible that the court of appeals will dismiss the action seeking review of the disapproval on the ground that disapproval is not final administrative action and therefore is not ripe for judicial review. *Utah International, Inc. v. EPA*, 478 F.2d 126, 127 (10th Cir.1973); *Big Rivers Electric Corp. v. E.P.A.*, 523 F.2d 16, 18 (6th Cir.1975), *cert. denied*, 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976); *Public Service Co. of Indiana v. U.S.E.P.A.*, 682 F.2d 626, 637–38 (7th Cir.1982), *cert. denied*, 459 U.S. 1127, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983). Disapproval places no regulation into effect but merely reactivates the administrative process. *Utah International*, at 127. Moreover, the industry intervenors are challenging an action which is "part of a continuing agency decision-making process which has not yet resulted in an order requiring compliance by the petitioners." *Bethlehem Steel Corp. v. EPA*, 536 F.2d 156, 161 (7th Cir.1976). *See also Commonwealth Edison Co. v. Train*, 649 F.2d 481, 485 (7th Cir.1980); *Board of Trade of City of Chicago v. Commodity Futures Trading Comm'n*, 704 F.2d 929, 932 (7th Cir.1983). Thus, there is no hardship to the industry intervenors, as they might allege had a regulation been approved or promulgated which required their compliance. When a regulation is promulgated it will clearly be reviewable. Therefore, the court of appeals might properly find that "[i]n light of these factors and the strong national interest in furthering the mandate of the Clear Air Act, judicial action is not warranted at this time; action which would further delay the already prolonged program to develop and maintain an unpolluted environment." *Id.* at 164. If this court were also to dismiss the instant action, CBE would have to begin the process anew in the district court. By exercising its jurisdiction, this court

hopes to avoid further delay by the EPA in complying with the Clean Air Act.

On the other hand, the court of appeals may affirm the EPA's disapproval. This will merely reinforce the EPA's existing mandatory duty to promulgate federal regulations. If this court were to dismiss the instant action, CBE would then have to retrace its steps and file the same action, under section 304, 42 U.S.C. § 7604, to have the district court compel the EPA's action. By exercising its jurisdiction this court will have avoided that additional delay.

Finally, the court of appeals may find the EPA's disapproval to be arbitrary and capricious. That scenario does raise the possibility of needless administrative action in the interim. Even there, however, agency action is not forever frozen in time, and consideration of further agency action becomes part of an ongoing administrative process. In any case, there is no concern over inconsistent judicial decisions because the court of appeals' decision would go to the propriety of the EPA's disapproval, while this court's decision would not involve the propriety of the disapproval but would merely order the EPA to act. These decisions would not conflict.

■ A discussion of what action the court of appeals may take, however, is merely speculative.[5] Congress specifically provided the district courts jurisdiction to grant the relief CBE seeks "to order the Administrator to perform [a non-discretionary] act." Clean Air Act § 304(a)(2), 42 U.S.C. § 7604(a)(2). As the Court of Appeals for the District of Columbia Circuit recently stated:

> Given this unusually self-contained statutory scheme, there is no room in which to import the well-founded presumption against bifurcation of judicial forums. However economical we may find exclusive court of appeals review ... to be, it is one thing to read notions of judicial economy into statutory terms capable of assimilating them and quite

---

**5.** In fact, the court of appeals has to date taken no action.

**114**

another to read out Congress' jurisdictional terms in order to accommodate our own policy preferences.

*Lorion v. U.S. Nuclear Regulatory Comm'n,* 712 F.2d 1472, 1478 (D.C.Cir. 1983), *cert. granted,* —— U.S.——, 104 S.Ct. 1676, 80 L.Ed.2d 152 (1984). *See also City of Highland Park v. Train,* 374 F.Supp. 758, 767 (N.D.Ill.1974). Similarly, this court should not disturb the bifurcated and mutually exclusive jurisdictional scheme which Congress has provided under the Clean Air Act.

### CONCLUSION

After reconsideration of its decision in *CBE II,* the court now denies the EPA's motion to dismiss that part of count I which seeks to compel the EPA to perform its non-discretionary duty to promulgate regulations to replace the disapproved Illinois rule regarding coke plant pushing operations. At the time *CBE II* was decided, the EPA had pending a proposal to reverse its disapproval of the coke plant pushing rule. The EPA did not subsequently reverse its disapproval, however, and now the disapproval triggers the EPA's duty to adopt federal regulations. Despite over two years' passage since the Act's original deadline for attainment, and over three years' passage since the EPA's original decision disapproving the rule, the EPA has yet to propose alternate federal regulations, as the Act requires. To enforce the Act's requirements Congress provided the district courts with jurisdiction to compel the EPA to perform its statutory, non-discretionary duties. Therefore, this court has jurisdiction to enforce the Act's requirements.