Mark **ABRAMOWITZ**, Petitioner,

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**, Respondent.

·No. 84–7642.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 5, 1987.

Decided Nov. 3, 1987.

As Modified on Denial of Rehearing
Jan. 6, 1988.

Daniel Selmi, Los Angeles, Cal., Nicholas C. Arguimbau, Law Offices of Ephraim Margolin, Marc Mihaly, Shute, Mihaly & Weinberger, San Francisco, Cal., for petitioner.

Michael Wenig, U.S. Dept. of Justice, Washington, D.C., for respondent.

Alan Waltner, Gorman & Waltner, Oakland, Cal., for intervenors Sierra Club, Citizens for a Better Environment, Coalition for Clean Air, Group Against Smog Pollution, and Clean Air Now.

Gregory R. McClintock, McClintock, Kirwan, Benshoof, Rochefort, and Weston, Los Angeles, Cal., for intervenor Western Oil and Gas Ass'n.

Robert A. Wyman, Latham & Watkins, Los Angeles, Cal., for intervenor Los Angeles Area Chamber of Commerce.

Before WIGGINS and O'SCANNLAIN, Circuit Judges, and CARROLL,[*] District Judge.

O'SCANNLAIN, Circuit Judge:

This petition for judicial review of agency administrative action presents a unique question of jurisdiction and scope of review under the Clean Air Act. Petitioner challenges the Environmental Protection Agency's ("EPA or Agency") approval of certain air pollution control measures in the South Coast Air Basin (primarily the Los Angeles metropolitan area) portion of California's State Implementation Plan ("SIP") without EPA's requiring attainment of the statutory air quality standards before the December 31, 1987 deadline. EPA argues that while the court of appeals properly can review that part of its decision which approved the control measures, only a district court may review the December 31, 1987 attainment issue. Because we find both aspects of the EPA's decision reviewable in this court, the question then becomes whether we should simply vacate and remand the matter to the Agency for further consideration, or, in the alternative, direct the EPA to take action consistent with the specific restrictions and timetables prescribed by Congress.

We conclude that the EPA exceeded its authority under the Clean Air Act by approving the control measures without determining whether those measures would

[*] Honorable Earl H. Carroll, United States District Judge, District of Arizona, sitting by designation.

demonstrate attainment by the December 31, 1987 statutory deadline. Because we find no evidence in the record to indicate that EPA intends to take final action before 1988, we remand this case with the specific instruction that EPA disapprove the relevant portions of the SIP and face up to implementing the measures which are to be triggered by failure to meet attainment requirements.

## FACTS AND AGENCY PROCEEDINGS

Federal involvement in the regulation of air pollution began in 1955, with the passage of the Air Pollution Control Act. Pub.L. No. 84–159, 69 Stat. 322 (1955). The purpose of that legislation was to provide financial and technical assistance to the states in an effort to define and suggest solutions to the growing problem of air pollution. In 1963 Congress expanded its role with the enactment of the Clean Air Act ("CAA" or "Act"). Pub.L. No. 88–206, 77 Stat. 392 (1963). The 1963 legislation directed the then-designated Department of Health, Education & Welfare to prepare "criteria documents" on the effects of several air pollutants, and to distribute these documents among the states. The states were slow to act, however, and the Clean Air Act Amendments of 1970 reflected congressional impatience by increasing the federal role in air quality management. Pub.L. No. 91–604, 84 Stat. 1690 (1970); *see Train v. Natural Resources Defense Council, Inc.,* 421 U.S. 60, 63–64, 95 S.Ct. 1470, 1473–74, 43 L.Ed.2d 731 (1975).

Section 109 of the 1970 CAA Amendments directed the Administrator of the EPA to establish National Ambient Air Quality Standards ("NAAQS") for any air pollutants that might endanger public health or welfare. 42 U.S.C. § 7409 (1982). The provision stated that there should be two standards for each pollutant listed: "primary" standards were to allow "an adequate margin of safety ... requisite to protect the public health," while the "secondary" standards were to "protect the public welfare from any known or anticipated adverse effects associated with the presence of any such air pollutant in the

ambient air." 42 U.S.C. § 7409(b) (1982). EPA issued NAAQS standards for six criteria pollutants in 1971: particulate matter, sulfur dioxides, carbon monoxide, nitrogen oxides, ozone, and hydrocarbons. 36 Fed. Reg. 8186 (1971), 40 C.F.R. Part 50 (1986); *see* Currie, *Air Pollution, Federal Law and Analysis,* § 4.02 (1981). Lead was added to the list in 1978 and hydrocarbons were removed in 1983. *Id.*

The 1970 Amendments also reflected Congress' intent to maintain a federal-state partnership for the control of air pollution. *See Bethlehem Steel Corp. v. Gorsuch,* 742 F.2d 1028, 1036 (7th Cir.1984). Section 110(a)(1) required that states submit state implementation plans ("SIPs") to provide for the "implementation, maintenance, and enforcement" of the NAAQS. 42 U.S.C. § 7410(a)(1) (1982). Section 110(a)(2) identified specific control measures that must be included in a SIP. 42 U.S.C. § 7410(a)(2) (1982). The 1970 Amendments also specified that the primary standards were to be attained within three years from the date of the original SIP's approval. 42 U.S.C. § 7410(a)(2)(A) (1982).

Faced with widespread failure by the states to attain NAAQS standards within the initial timeframe, Congress in 1977 amended the Clean Air Act once again to allow certain "nonattainment" areas of the country to apply for time extensions. The new deadline for attainment of primary NAAQS was set for December 31, 1982. 42 U.S.C. § 7502(a)(1) (1982). The only exception to the 1982 deadline appeared in section 172(a)(2) of part D in the 1977 Amendments, allowing for a five-year extension, to December 31, 1987, for those areas where it was "not possible" to meet the 1982 deadline for carbon monoxide or ozone standards. 42 U.S.C. § 7502(a)(2) (1982).

EPA designated four California areas as "nonattainment" for carbon monoxide or ozone (or both) shortly after Congress enacted the 1977 CAA Amendments: South Coast Air Basin (carbon monoxide and ozone); Ventura County (ozone); Fresno County (carbon monoxide and ozone); Sacramento (ozone). 43 Fed.Reg. 8964 (Mar.

3, 1978). In 1979, pursuant to its authority to impose sanctions in 42 U.S.C. § 7502, the EPA imposed a construction moratorium on all nonattainment areas in the country, 44 Fed.Reg. 38,473 (July 2, 1979), including the South Coast Air Basin comprising Orange County and portions of Los Angeles, San Bernardino, and Riverside Counties, the subject of this litigation. California subsequently submitted revisions to the South Coast SIP and received EPA approval. 47 Fed.Reg. 28617 (July 1, 1982). As a result, the construction ban was lifted. 47 Fed.Reg. 28620 (July 1, 1982).

In 1982 California requested and received an extension for attainment of carbon monoxide and ozone NAAQS until December 31, 1987. 47 Fed.Reg. 50,864 (Nov. 10, 1982). The state then submitted revisions for the South Coast SIP, but EPA proposed to disapprove the revisions and again to impose a construction ban. 48 Fed.Reg. 5074 (Feb. 3, 1983). In its notice of proposed rulemaking EPA noted that the control strategy would not achieve attainment by December 31, 1987. *Id.* at 5082.

EPA received considerable negative comment on its 1983 proposed disapproval. *See* 48 Fed.Reg. 50686 (Nov. 2, 1983); 49 Fed.Reg. 30300, 30303–04 (July 30, 1984). Subsequently, when the state submitted further revisions, EPA took final action by approving the carbon monoxide and ozone control measures without requiring any demonstration that those measures would achieve attainment by the statutory deadline. The Agency simply noted that it was deferring any final approval or disapproval of the attainment provisions in the SIP. 49 Fed.Reg. 30300, 30305 (July 30, 1984).

On September 28, 1984 Abramowitz filed a petition seeking review of EPA's July 30, 1984 decision. Abramowitz's petition was timely, complying with the sixty day limit proscribed in section 307(b)(1) of the CAA, 42 U.S.C. § 7607(b)(1). Thereafter, Abramowitz and the EPA entered into a stipulation of agreement, and in September 1985 they made a joint request that this court stay consideration of the petition. After several extensions of the stay the court in October 1986 ordered Abramowitz either to dismiss the petition or to proceed with briefing. Abramowitz advised this court that settlement did not appear likely, and the case was set for argument. The Sierra Club, in association with four other environmental groups, filed a brief as intervenors in support of Abramowitz. The Western Oil and Gas Association ("WOGA") and the Los Angeles Area Chamber of Commerce also intervened, filing in support of the EPA. The Alabama Power Company (representing numerous electric power companies) filed an *amicus* brief in support of the EPA.

Less than one month before this case was argued, EPA "reproposed to disapprove" California's SIP for the South Coast carbon monoxide and ozone NAAQS standards. 52 Fed.Reg. 26404, 26431 (July 14, 1987). In that notice, the Agency acknowledged that continued deferral, for California as well as for other areas,:

would frustrate the purposes of Part D by abandoning upfront complete planning for attainment by a near-term fixed deadline in favor of iterative planning for progress alone. For primarily this reason, EPA has concluded that (1) it lacks authority to [continue deferral] for those extension areas that have yet to show that their SIPs assure attainment by the end of 1987 (or at least within a short time thereafter) and (2) it has no choice but to disapprove the plans for those areas and impose the construction ban in section 110(a)(2)(I).

52 Fed.Reg. 26408–09 (July 14, 1987). The Agency emphasized that its notice was not a final decision, however, and that it did not plan to publish a final policy or take final action on its proposals to disapprove until 1988. *Id.* at 26410.

## STANDARD OF REVIEW

◼ Final administrative actions taken by the EPA pursuant to the Clean Air Act are reviewed under provisions similar to those set forth in the Administrative Procedure Act. As such, "the court may reverse any such action found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; ... [or]

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 42 U.S.C. § 7607(d)(9); *cf.* 5 U.S.C. § 706(2)(A). *See State of Arizona v. Thomas,* 824 F.2d 745, 748 (9th Cir.1987); *Sierra Club v. Gorsuch,* 715 F.2d 653, 658 (D.C.Cir.1983). Under this standard, the court will engage in a substantial inquiry, but it must not substitute its own judgment for that of the Agency. *California Air Resources Bd. v. EPA,* 774 F.2d 1437, 1440 (9th Cir.1985).

## DISCUSSION

### 1. Jurisdiction.

The Clean Air Act provides for a bifurcated system of judicial review. Section 304 specifies that violations of standards or failures to perform nondiscretionary duties are reviewable in a district court. 42 U.S.C. § 7604(a)(2) (1982). Section 307 provides that:

> A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 7410 of this title ... or any other final action of the Administrator under this chapter (including any denial or disapproval by the Administrator under subchapter 1 of this chapter) which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit.

42 U.S.C. § 7607(b)(1) (1982). These provisions are not exclusive, however. *See* 1 Rodgers, *Environmental Law: Air & Water,* § 3.3 at 197 (1986) (like "rings linked together ... these jurisdictional circles may spill over into one another").

It is undisputed that when the EPA fails to perform a non-discretionary duty, the district court has jurisdiction. It is also undisputed that when the Agency has clearly taken final action, the court of appeals has jurisdiction over challenges to that action. *Kennecott Copper v. Costle,* 572 F.2d 1349, 1353–55 (9th Cir.1978); *Bethlehem Steel Corp. v. EPA,* 782 F.2d 645, 654–55 (7th Cir.1986); *Oljato Chapter of Navajo Tribe v. Train,* 515 F.2d 654, 657–58 (D.C.Cir.1975). Both parties agree that EPA's July 30, 1984 final approval of

the ozone and carbon monoxide control measures constituted final action within the meaning of section 307 of the Act, and the approval aspect of the Agency's July 30 decision is properly before this court for review. EPA maintains, however, that its deferral concerning attainment demonstration was not final action. The Agency refers to the explicit language in its July 30 notice, stating that it was "holding open" the question of how to act on the plan as a whole and that it was "not taking final actions on those demonstrations at this time." 49 Fed.Reg. 30304 (July 30, 1984).

■ We do not believe the Agency's own designation of its action determines the jurisdictional issue. When faced with a similar defense of Agency deferral, the District of Columbia Circuit noted that "EPA's position—that final action has not been taken—does not affect our jurisdiction ... Judicial review of decisions not to regulate must not be frustrated by *blind* acceptance of an agency's claim that a decision is still under study." *Sierra Club v. Gorsuch,* 715 F.2d at 658–59 (emphasis in original). The mere fact that the Agency did not label its action "final" does not preclude review in this court under section 307. It is the effect of the action and not its label that must be considered. *See generally Harrison v. PPG Industries, Inc.,* 446 U.S. 578, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980).

■ In this case the petitioner has not challenged EPA's deferral of final action in a vacuum. What he has challenged is the final action that EPA admits it has taken; the approval of the South Coast carbon monoxide and ozone control measures. Petitioner alleges that this approval is invalid because it does not assure attainment of the NAAQS standards by the end of 1987 as required by section 172(a) of the Act, 42 U.S.C. § 7502(a)(2). We agree. Thus, we decline EPA's suggestion to sever the July 30, 1984 decision for purposes of jurisdiction, as we believe such severance would result in nothing more than the "jurisdictional badminton" that Judge Skelly

Wright warned of in *N.R.D.C. v. EPA*, 512 F.2d 1351, 1361 (D.C.Cir.1975).

In taking this approach, we are bound by *Kamp v. Hernandez*, 752 F.2d 1444 (9th Cir.), *modified*, 778 F.2d 527 (9th Cir.1985), where the EPA defended a decision similar to the one presented in this case. In *Kamp*, the EPA approved certain emission control measures in an Arizona SIP provision without requiring that attainment and maintenance of the NAAQS standards be shown. As in the present case, EPA argued in *Kamp* that only the control measures it expressly approved could be reviewed in a court of appeals, while its failure to act in other areas was subject to review in district court. Endorsing the Seventh Circuit's decision in *Indiana & Michigan Electric Co. v. EPA*, 733 F.2d 489 (7th Cir.1984), *Kamp* rejected EPA's argument and found jurisdiction over both aspects of the Agency's decision. *Kamp* held that "when the challenge to agency action 'is embedded in a challenge to the validity of an implementation plan,' jurisdiction lies in the circuit court reviewing the implementation plan." *Kamp*, 752 F.2d at 1454 (quoting *Indiana & Michigan Electric*, 733 F.2d at 490).

EPA asserts that "both *Kamp* and *Indiana* stand merely for the principle that a court of appeals can review agency inaction only as necessary to determine the propriety of agency action, not to decide whether agency inaction has violated a mandatory duty to act." We do not find the language of *Kamp* or *Indiana* so limiting, however. As in *Kamp*, the challenge to Agency inaction in the present case is "embedded in a challenge to the validity of an implementation plan." 752 F.2d at 1454. As such, we must review both aspects of the Agency's decision. To hold otherwise would be to create "a danger that two proceedings involving essentially the same agency action could occur simultaneously." *Kamp*, 752 F.2d at 1454; *see also City of Seabrook v. Costle*, 659 F.2d 1371, 1373 (5th Cir.1981) ("The suggestion that the district court can order the Administrator to do things he has failed to do in the SIP approval process while the court of appeals is reviewing what the Administra-

tor has actually done would result in an impractical process of piecemeal review that Congress could not have intended in §§ 304 and 307"); Rodgers, § 3.3 at 209 ("The scope of any deliberation producing action includes things not done that are fairly considered part of the original choice"); Currie, § 9.10 at 9–31 ("Allegations that the Administrator has failed to take action required by statute should not be permitted to circumvent the plain statutory command that judicial review of decisions respecting implementation plans and other regulations is to be in the courts of appeals").

We hold that both aspects of petitioner's challenge to the EPA's July 30, 1984 decision are reviewable in this court pursuant to section 307 of the Act, 42 U.S.C. § 7607 (1982).

### 2. Approval of the Ozone and Carbon Monoxide Standards.

■ Abramowitz contends that EPA violated express provisions of the Clean Air Act by approving the South Coast ozone and carbon monoxide control measures without determining whether those measures will make reasonable further progress or attain the NAAQS standards by December 31, 1987. EPA acknowledges its responsibility to ensure compliance with the specific statutory standards, but the Agency relies on its administrative discretion to approve portions of a SIP without stating final approval.

The Act requires that all SIPs must contain "emission limitations, schedules, and timetables for compliance with such limitations, and *such other measures as may be necessary to ensure attainment and maintenance of such primary or secondary standard.*" 42 U.S.C. § 7410(a)(2)(B) (1982) (emphasis added). The Supreme Court has noted that "on its face, [42 U.S.C. § 7410(a)] applies to *any* revision, without regard either to its breadth of applicability, or to whether it is to be effective before or after the attainment date." *Train*, 421 U.S. at 80, 95 S.Ct. at 1482 (emphasis in original). In the case of ozone and carbon monoxide standards, each SIP

must "contain enforceable measures to assure attainment of the applicable standard not later than December 31, 1987." 42 U.S.C. § 7502(c) (1982).

EPA regulations drafted to implement the Clean Air Act state that "the Administrator shall approve any plan, or portion thereof, or any revision of such plan, or portion thereof, if he determines that it meets the requirements of the Act." 40 C.F.R. § 51.8 (1986). The Supreme Court describes the EPA's task in this regard as follows: "In each instance the Agency must measure the existing level of pollution, compare it with the national standards, and determine the effect on this comparison of specified emission modifications." *Train*, 421 U.S. at 93, 95 S.Ct. at 1488.

When the control measures at issue in this case were first submitted to the EPA in 1982, the Agency proposed to disapprove the SIP revisions because they failed to demonstrate attainment within the statutory timeframe: "Although substantial progress toward attainment will occur, the requirement for reasonable further progress is not met since the control strategy does not provide for attainment by December 31, 1987." 48 Fed.Reg. 5074, 5082 (Feb. 3, 1983). EPA received numerous negative comments on its proposed notice of rulemaking, but the state did not submit any additional control measures. Nevertheless, in its 1984 decision the EPA announced that it would "approve the control strategies for the four 1982 plans described in this notice as they strengthen the SIP and demonstrate progress toward achieving the NAAQS." 49 Fed.Reg. 30300, 30304 (July 30, 1984). The Agency noted that "the final plan for ozone and carbon monoxide was substantively the same as the draft plan," but it went on to state that it would approve the control measures regardless of their effect on the attainment deadline. *Id.* at 30302. The approval notice simply stated that:

> EPA is not acting at this time on the attainment/RFP ["reasonable further progress"] demonstration portions of the plans contained in this notice because it is holding open the question of the ade-

quacy of these demonstrations. EPA is performing an in-depth evaluation of what control measures would be required to demonstrate attainment of the ozone and/or CO NAAQS.

*Id.* at 30305.

EPA defends its approval of the control measures on the grounds that the Agency has considerable discretion to approve portions of a SIP while reserving approval on the attainment demonstration. Although the Agency correctly sets forth the proposition that a reviewing court must apply a highly deferential standard of review to administrative action, the Agency does not provide any clear statutory or judicial authority for its action in this specific instance. Although it is axiomatic that a reviewing court cannot substitute its judgment for that of the administrative agency, it is equally well established that a court cannot defer to agency discretion when the intent of the Act is clear. *Chevron v. N.R.D.C.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *American Cyanamid Co. v. EPA*, 810 F.2d 493, 496 (5th Cir.1987).

Section 172(a)(1) of the Clean Air Act states that: "The provisions of an applicable implementation plan for a State ... shall provide for attainment of each [of the NAAQS]." 42 U.S.C. § 7502(a)(1) (1982). There is no reference whatsoever in this statutory provision to a separate determination of control measures and attainment demonstration. The Supreme Court notes that "the principle [governing the conditions for EPA approval of a SIP] is that the plan provide for the attainment of the national primary ambient air quality standards." *Train*, 421 U.S. at 66–67, 95 S.Ct. at 1475–76. Although it appears that the EPA has never before attempted to argue that control measures can be approved independent of demonstrating attainment, courts have previously reminded the Agency of its essential task in this regard. *See, e.g., Public Service Co. of Indiana v. EPA*, 682 F.2d 626, 632 (7th Cir.1982) ("The function of the Administrator's approval power over the original SIPs and their revisions is identical: to ensure that the state's SIPs

comply with the minimum requirements of 42 U.S.C. § 7410(a)(2)(A)–(K)"), *cert. denied,* 459 U.S. 1127, 103 S.Ct. 762, 74 L.Ed.2d 977 (1982); *City of Seabrook v. U.S. Environmental Protection Agency,* 659 F.2d 1349, 1359 (5th Cir.1981) ("[T]he ultimate question to be resolved by the Agency ... [is] whether the plan submitted will 'provide for' attainment of the national standards by specified future dates"), *cert. denied,* 459 U.S. 822, 103 S.Ct. 51, 74 L.Ed.2d 57 (1982).

We conclude that EPA exceeded its authority by approving the ozone and carbon monoxide control measures in California's South Coast SIP without requiring a demonstration of attainment by December 31, 1987.

### 3. The Appropriate Nature of Relief.

The petitioner requests that we order EPA to disapprove California's South Coast carbon monoxide and ozone SIP provisions because (1) the existing control measures will not meet the attainment deadlines and (2) there is no evidence in the record to indicate that additional measures are being considered. Abramowitz contends that because of the Agency's inaction, the enforcement procedures and sanctions specified by Congress have not been allowed to provide the incentive for compliance that Congress envisioned. Several courts have noted that EPA's role in this area is not discretionary. *See, e.g., Connecticut Fund for the Environment v. EPA,* 672 F.2d 998, 1007–08 (2d Cir.), *cert. denied,* 459 U.S. 1035, 103 S.Ct. 445, 74 L.Ed.2d 601 (1982); *Sierra Club v. Indiana–Kentucky Electric Corp.,* 716 F.2d 1145, 1153 (7th Cir.1983); *Citizens for a Better Environment v. Costle,* 610 F.Supp. 106, 111 (N.D.Ill.1985). Abramowitz maintains that EPA's prolonged deferral in this case is a thinly veiled attempt to avoid or to change the requirements of the Act.

EPA does not contest the fact that it has a statutory duty to take final action on the SIP revisions, but the Agency argues that the Act grants it the discretion to defer approval or disapproval until it decides which action is most appropriate. Rather than forcing the choice of its eventual decision, the Agency suggests that "the court should at most vacate EPA's deferral and remand the matter to EPA for further consideration consistent with the court's decision."

■ The general rule is that when an administrative agency has abused its discretion or exceeded its statutory authority, a court should remand the matter to the agency for further consideration. *See Camp v. Pitts,* 411 U.S. 138, 143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Loma Linda University v. Schweiker,* 705 F.2d 1123, 1127 (9th Cir.1983). We note again, however, that when the language of a statute is clear and unambiguous it must be given effect. *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82.

■ The petitioner is correct in his assertion that the existing record reveals no effort on the part of the state to submit new proposals for SIP revisions, nor does it reveal any intent by the EPA to consider alternative control measures. What the record does reveal is EPA's desire to seek legislative relief. *See, e.g.,* 46 Fed.Reg. 7182, 7188 (1981); Testimony of Lee Thomas, Administrator, United States Environmental Protection Agency, Before the House Subcommittee on Health and the Environment of the House Committee on Energy and Commerce, Washington, D.C., February 19, 1987. Neither the Agency nor the industry *amici* refute Abramowitz's contention that there is no evidence in the record to indicate that further action is contemplated within the statutory timeframe.

In its most recent notice, EPA admits it "now believes that the absence of a demonstration of attainment by the end of 1987 (or a fixed, near-term date thereafter) compels the Agency to disapprove the attainment and RFP portions of these SIP submittals." 52 Fed.Reg. 26432 (July 14, 1987). In that same notice, however, the Agency emphasizes that it does not plan to take final action before the statutory deadline. *Id.* at 26410.

Because we find the language of the Act clear and unambiguous, we do not believe that EPA has the discretion to ignore the statutory deadline. We are informed by counsel for both sides of their expectation that Congress will extend the deadline once again in the near future, but we must apply the law as it now stands, not as it may become. As one commentator has noted, the Clean Air Act has been "a potpourri of postponements, revisions, extensions and suspensions." Rodgers, § 3.13 at 289. Until the Clean Air Act is further considered, however, the Agency must "give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 782. Although the Agency's task may be difficult, it must nevertheless comply with its legislative mandate. Placed between the express intent of Congress and the recalcitrance of the Agency, the proper role of the court in this case must be to remind the Agency that its duty is to apply the existing law.

We conclude that the EPA exceeded its authority by approving the South Coast carbon monoxide and ozone control measures without requiring a demonstration of attainment before December 31, 1987. Because the record clearly indicates that the Agency has no intention of taking final action before the statutory deadline, we believe that we have no other option but to order EPA to disapprove the relevant SIP provisions.

EPA contends in its petition for rehearing that, at the time it disapproves SIP provisions, it may nonetheless approve individual control measures if they would strengthen the SIP and improve air quality. This issue is not properly before the court at this time and therefore we express no view on the matter.

**4. Attorney Fees.**

 Petitioner and certain intervenors seek award of costs of litigation including attorney fees. Under 42 U.S.C. § 7607(f), we can do so whenever we determine that "such award is appropriate." Here, we deem an award appropriate because petitioner has (1) prevailed on the merits and (2) contributed substantially to the goals of the Act in doing so. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 682–84, 103 S.Ct. 3274, 3276–77, 77 L.Ed.2d 938 (1983); *Carson–Truckee Water Conservancy Dist. v. Secretary,* 748 F.2d 523, 525–26 (9th Cir. 1984), *cert. denied,* 471 U.S. 1065, 105 S.Ct. 2139, 85 L.Ed.2d 497 (1985).

Pursuant to Circuit Rule 39–1, petitioner is ordered to submit a bill of costs and request for attorney fees with supporting affidavits for review by and further order of this panel. The Sierra Club intervenors group may submit a bill and request with supporting affidavits accompanied by a brief of no more than five pages in support of its position that intervenors, as distinguished from parties, may also be entitled to such award. Objections or opposition may also be filed in accordance with Circuit Rule 39–1.

## CONCLUSION

The July 30, 1984 decision of the EPA to approve the ozone and carbon monoxide control measures violated the requirement of the Clean Air Act that such measures must provide for attainment of the statutory standards. Because the Agency segregated attainment demonstration from the approval of the control measures themselves, the approval of the control measures is vacated. Furthermore, because we find that the EPA exceeded the scope of its discretion by deferring action indefinitely in derrogation of a clear statutory deadline, we remand with specific instructions that EPA disapprove the relevant SIP provisions.

We emphasize, however, that we are not intruding upon the Agency's discretion to decide what actions must follow disapproval. That decision is now properly before the EPA.

VACATED and REMANDED with instructions.