NATURAL RESOURCES DEFENSE COUNCIL, INC.; American Lung Association; American Lung Association of New York State, Inc.; Brooklyn Lung Association, Inc.; Queensboro Lung Association; and American Lung Association, Hudson Valley, Inc., Plaintiffs,

v.

NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION; Henry G. Williams, as Commissioner, New York State Department of Environmental Conservation; United States Environmental Protection Agency; and Lee M. Thomas, as Administrator, United States Environmental Protection Agency, Defendants.

ATLANTIC TERMINAL URBAN RENEWAL AREA COALITION, John Theodore Glick, Anne McClellan, Loraine Oliver, and Mildred Davis, Plaintiffs,

v.

NEW YORK CITY DEPARTMENT OF ENVIRONMENTAL PROTECTION; New York City Public Development Corporation; New York City Board of Estimate; Edward I. Koch; Harvey W. Schultz; New York City Planning Commission; Sylvia Deutsch; United States Environmental Protection Agency; Lee M. Thomas; United States Department of Housing and Urban Development; and Samuel R. Pierce, Jr., Defendants.

Nos. 87 Civ. 0505 (MEL), 87 Civ. 4242 (MEL).

United States District Court, S.D. New York.

Nov. 21, 1988.

As Amended Dec. 2, 1988.

Donald S. Strait, Eric A. Goldstein, Natural Resources Defense Council, Inc., David S. Schoenbrod, New York City, Wallace Boulton (Assisting in the preparation of the brief), for plaintiffs in 87 Civ. 0505 (MEL).

Edward Copeland, Elizabeth St. Clair, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York City, for plaintiffs in 87 Civ. 4242 (MEL).

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for Federal Defendants in 87 Civ. 0505 (MEL) and 87 Civ. 4242 (MEL); Roger J. Marzulla, Asst. Atty. Gen., Land and Natural Resources Div., U.S. Dept. of Justice, Richard W. Mark, Mary Ellen Kris, Asst. U.S. Attys., S.D. N.Y., David Kaplan, Michael M. Wenig, Land and Natural Resources Div., U.S. Dept. of Justice, Richard Roos–Collins, U.S. E.P.A., Lisa Burianek, Asst. Regional Counsel, U.S. Environmental Protection Agency, Region II, of counsel.

LASKER, District Judge.

These actions concern the quality of the air in the New York metropolitan area, particularly the presence of the pollutants carbon monoxide and ozone, and the nature of the responsibilities established by the Clean Air Act ("the Act") in an attempt to control and abate their emission. The Act, originally enacted by Congress in 1970, established a partnership between the federal government and the states to ensure that the two would work together to achieve compliance with its provisions. Pursuant to the 1977 amendments to the Act, New York's State Implementation Plan ("SIP"), a plan adopted by the state and approved by the Environmental Protection Agency, was to provide for attainment of the national ambient air quality standards ("NAAQS") for carbon monoxide and ozone "as expeditiously as practicable but not later than December 31, 1987." 42 U.S.C. § 7502(a)(2). The issue raised by these motions is whether the Administrator of the Environmental Protection Agency, confronted with data indicating that the NAAQS for carbon monoxide and ozone were not to be attained in New York by the statutory deadline, must notify New York State that its SIP is substantially inadequate and require its revision by a date certain.

The claims of plaintiffs Natural Resources Defense Council and several New York area lung associations (collectively "NRDC") and those of plaintiffs Atlantic Terminal Urban Renewal Area Coalition, an association whose purposes include protecting and enhancing the environmental quality in downtown Brooklyn, and several named individuals (collectively "ATURA") at issue in this decision are virtually identical. Both complaints charge the EPA with failure to perform a nondiscretionary duty, in that it has "failed to notify the State formally [that its SIP is substantially inadequate to achieve the national primary standard for carbon monoxide by the statutory deadline] and ... failed to set a deadline for revision by the State of its carbon monoxide Plan;"[1] the NRDC makes an

---

1. NRDC Complaint, Claim 9, at ¶ 63; ATURA Complaint, Claim 2, at ¶ 45.

identical claim with respect to ozone.[2] Plaintiffs in both cases contend that this failure of EPA to act constitutes an "agency action unlawfully withheld and unreasonably delayed" in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.[3]

The United States Environmental Protection Agency and its Administrator Lee Thomas (collectively "EPA") move to dismiss, or for summary judgment dismissing, these claims. The EPA contends that the court lacks subject matter jurisdiction because the Administrator's duties to notify a state that its SIP is substantially inadequate and to set a date by which it is to be revised are discretionary and thus not a basis for either an APA claim or a citizen suit under § 304 of the Clean Air Act, 42 U.S.C. § 7604.[4] NRDC also moves for summary judgment on the three claims at issue in its action.

In addition, without conceding jurisdiction, the EPA maintains that its letter of May 26, 1988, described below and sent after these motions were fully briefed, moots these claims by notifying New York State of its SIP's inadequacy and initiating the revision process. Plaintiffs concede that the letter of May 26, 1988 moots the question of the Administrator's duty to find the SIP substantially inadequate, but contend that the issue of the Administrator's duty to set a date certain by which the plan is to be revised remains before this court and within its subject matter jurisdiction. I conclude that the court has subject matter jurisdiction and that the Administrator, despite diligent efforts to develop a coordinated, national policy to address widespread nonattainment, has failed to set a date certain for the SIP's revision as required by the Act.

## BACKGROUND

As required by the Clean Air Act, the Administrator of the EPA established air quality standards for the pollutants ozone and carbon monoxide, among others, and New York State submitted and received approval for a SIP that provided for attainment of those standards by the statutory deadlines. Initially, states were to provide for attainment of the air quality standard by 1977. In 1977, when it became clear that many states were not going to meet this deadline, Congress amended the Act, to extend the statutory deadline to 1982. 42 U.S.C. § 7502(a)(1). In certain circumstances, for states failing to attain the standards for carbon monoxide and ozone, the deadline was extended to 1987, 42 U.S.C. § 7502(a)(2), providing the state complied with new, more stringent statutory requirements set forth in 42 U.S.C. §§ 7501–7508.

Both Congress and the EPA began to respond in 1987 to the evidence that many states would fail to attain the air quality standards for ozone and carbon monoxide by the end of that year. On July 14, 1987, the EPA published a "General Preamble and Notice of Future Actions" addressing "the likely persistence in many urban areas of violations of the national ambient air quality standards [NAAQS] for ozone and carbon monoxide beyond December 31, 1987...." 52 Fed.Reg. 26404, 26404 (to be codified at 40 C.F.R. Parts 51, 52 and 81). Therein, the EPA announced its intent to propose a national policy to address the SIP requirement for attainment of carbon monoxide and ozone standards in the following months and to promulgate a final policy and issue SIP calls by early 1988. *Id.* On November 24, 1987, the EPA published its proposed "Post–1987 Ozone and Carbon Monoxide Plan Revisions for Areas Not Attaining the National Ambient Air Quality Standards" ("Proposed Post–1987 Policy").[5] 52 Fed.Reg. 45,044.

---

**2.** NRDC Complaint, Claim Ten, at ¶ 65 and Claim Eleven, at ¶ 67.

**3.** NRDC Complaint, Claim 11, at ¶ 67; ATURA Complaint, Claim 3, at ¶ 47.

**4.** The State of New York, although not a moving party, has filed papers urging dismissal of plaintiffs' claims.

**5.** The public comment period on the Proposed Post–1987 Policy was scheduled to close on March 28, 1988. Letter of Richard W. Mark, Deputy Chief Appellate Attorney, Civil Division, United States Attorney, Southern District of New York, to Judge Morris E. Lasker (January 19, 1988).

Congress, at the close of 1987, passed and the President signed the Mitchell–Conte Amendment of December 22, 1987 ("the Amendment"), as part of the Budget Reconciliation Act of 1987, Pub.L. No. 100–202. The Amendment prohibits the EPA from imposing certain of the sanctions provided for in the Act for non-attainment areas in the Clean Air Act until August 31, 1988 [6] and specifies that, by August 31, 1988, the EPA is to identify and designate areas failing to attain the carbon monoxide and ozone standards as required by 42 U.S.C. §§ 7501–7508.[7]

On May 26, 1988, after these motions for summary judgment were fully briefed, Christopher Daggett, Regional Administrator of Region II of the EPA, sent to New York Governor Mario M. Cuomo a letter that states:

> [C]onsistent with EPA's responsibilities and pursuant to Section 110(a)(2)(H) of the Act, 42 U.S.C. 7410(a)(2)(H), I am notifying you that your State Implementation Plan (SIP) is substantially inadequate to achieve the NAAQS for ozone ... and, for carbon monoxide ... and, therefore, requires revision.[8]

The letter instructs New York to respond to the finding of inadequacy in two phases.

The first phase entails "(1) correcting identified deficiencies in the existing SIP, (2) adopting regulations previously required or committed to, but never adopted, (3) updating the areas' base year emissions inventory, and (4) committing to an ambient sampling program for nonmethane organic compounds in the New York City metropolitan area until attainment of the ozone standard is achieved." [9] On June 14, 1988, the EPA sent an additional letter, describing in more detail the information to be included in the SIP call response.[10] Sixty days later, New York was to submit a schedule of interim and final dates addressing the deficiencies enumerated; it is to complete the activities within one year of submission of the schedule.[11]

The second phase was to follow "EPA's issuance of a final policy on how the states should correct [and complete revisions to] their SIPs." [12] The letter does not specify either the anticipated date on which the policy may be enacted [13] or the time afforded the States to respond after the policy is adopted.[14]

---

6. The colloquy indicates that Congress adopted the short-term prohibition on imposing sanctions so as to provide it time "to make the needed decisions on the best way to assure national attainment of the air quality standards. These decisions require legislative changes; regulatory proposals will not suffice." 133 Cong. Rec. S17,812 (daily ed. December 11, 1987) (statement of Sen. Mitchell).

7. On June 6, 1988, the EPA "propose[d] rulemaking to create a list of nonattainment designations" pursuant to the Amendment; comments on this proposal were to be submitted by August 5, 1988. 53 Fed.Reg. 20,722, 20,722 (to be codified at 40 C.F.R. Part 81).

8. Declaration of Richard W. Mark ("Mark Declaration"), Exhibit A, Letter of Christopher J. Daggett, Regional Administrator for Region II, United States EPA, to Honorable Mario Cuomo, Governor of New York (May 26, 1988) ("May 26 letter"), at 1.

9. May 26 letter at 2.

10. Mark Declaration, Exhibit C, Letter of Conrad Simon, Director, Air and Waste Management Division, Region II, United States EPA, to Harry H. Hovey, Jr., Director, Division of Air

Resources, New York State Department of Environmental Conservation (June 14, 1988) ("June 14 letter").

11. May 26 letter at 3.

12. May 26 letter at 2.

13. EPA's proposed rulemaking to create a list of non-attainment areas of June 6, 1988 states that the EPA is still developing responses to comments received on the Proposed Post–1987 Policy and "now anticipates issuance of the final policy later this year, although this schedule depends in part on whether and how Congress amends the Act in this session." 53 Fed.Reg. at 20,724.

14. The Proposed Post–1987 Policy, however, indicates that the EPA anticipates allowing the states two years from the date of the SIP call to devise their ozone and carbon monoxide plans, 52 Fed.Reg. at 45,056, and approving "only those post–1987 SIP revisions that demonstrate attainment of the ozone and [carbon monoxide] standards within 3 years of the date of the EPA's approval of the revisions [with a possible 2–year extension under section 110(e) ]," 52 Fed.Reg. at 45,065.

All parties agree that the May 26 letter moots the claims charging the Administrator with failure to notify New York State of the inadequacy of its SIP to attain the carbon monoxide and ozone NAAQS. Plaintiffs, however, contend that the EPA letter does not resolve the question whether the EPA has a nondiscretionary duty to set a date certain by which the State must submit a revised and satisfactory SIP.

Thus, two questions remain. First, does the Administrator have a mandatory duty to set a date certain for revision of SIPs that are found inadequate for failure to attain NAAQS, in which case the statute grants the court subject matter jurisdiction? Second, if so, has the Administrator in the letter of May 26, 1988 fulfilled this duty?

## DISCUSSION

■ Section 304 of the Clean Air Act provides that "any person may commence a civil action ... against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator...." 42 U.S.C. § 7604(a)(2). Section 304 confers jurisdiction only for claims alleging a failure to perform a mandatory act or duty. *See, e.g., Council of Commuter Organizations v. Metropolitan Transp. Auth.*, 683 F.2d 663, 665 (2d Cir.1982); *New England Legal Foundation v. Costle*, 632 F.2d 936, 937–38 (2d Cir.1980).

■ At issue is an interpretation of the Administrator's duty specified in section 110(c)(1) of the Act, 42 U.S.C. § 7410(c)(1), which states:

The Administrator shall, after consideration of any State hearing record, promptly prepare and publish proposed regulations setting forth an implementation plan, or portion thereof, for a State if—

. . . . .

(C) the State fails, within 60 days after notification by the Administrator or such longer period as he may prescribe, to revise an implementation plan as required pursuant to a provision of its plan referred to in subsection (a)(2)(H) of this section.[15]

The language of § 110, the legislative history of the Act, and case law construing similar provisions of the Act support the plaintiffs' argument that § 110(c)(1)(C) requires the Administrator to set a date certain for revision of a SIP found to be inadequate.

First, the language of § 110(c)(1)(C)—stating that the Administrator shall revise the SIP if the State does not do so "within 60 days after notification by the Administrator or such longer period as he may prescribe"—on its face, appears to leave the Administrator discretion only as to the date that is set, but not whether to set a date. The use of the word "may" rather than "shall" in the clause does not indicate that the duty to set a date certain is discretionary, *Anderson v. Yungkau*, 329 U.S. 482, 485, 67 S.Ct. 428, 430, 91 L.Ed. 436 (1947) (when "shall" and "may" are used in the same provision, former is normally interpreted as mandatory and latter permissive). The "may" in § 110(c)(1)(C) indicates only that the Administrator may extend the period for revision beyond 60 days.

The language of § 110(c)(1) clearly reflects the Administrator's duty to act:

The Administrator shall, within six months after the date required for submission of such plan (or revision thereof), promulgate any such regulations unless, prior to such promulgation, such State has adopted and submitted a plan (or revision) which the Administrator determines to be in accordance with the requirements of this section.[16]

Were the Administrator not required to set a date by which the revisions would be made, his or her duty to cause the plan to

---

**15.** Subsection (a)(2)(H) requires states to revise SIPs that the Administrator finds "substantially inadequate to achieve the national ambient air quality primary or secondary standard...." 42 U.S.C. § 7410(a)(2)(H).

**16.** This portion of § 110(c)(1) follows the language of § 110(c)(1)(C) quoted earlier.

178 

be revised within a specified time limit would not be triggered and the mandatory duty of the Administrator to issue new rules would be frustrated. *See Citizens for a Better Environment v. Costle,* 515 F.Supp. 264, 277 (N.D.Ill.1981) (holding that EPA had a mandatory duty to determine whether SIP revisions conformed with Act and to revise promptly nonconforming provisions under § 110(c)(1)).

This interpretation is also consistent with the legislative history of the Act. The Act's consistent specification of a date by which the states were to adopt air quality standards for carbon monoxide and ozone, the 1977 amendments calling for more stringent requirements for SIPs providing for attainment no sooner than 1987, and incorporation of sanctions for nonattainment areas reflect Congress' continued concern with attainment of these standards. *See Union Electric Co. v. EPA,* 427 U.S. 246, 258, 96 S.Ct. 2518, 2526, 49 L.Ed.2d 474 (1976) (characterizing deadline for attainment of primary air quality standards as central to regulatory scheme of the Act). That intent would be undermined were the Administrator to require revision of the SIP to ensure attainment, but fail to specify a reasonable date for completion of the revisions. In this case, the intent of Congress is sufficiently clear so that the Administrator's interpretation of § 110 is not entitled to deference. *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (if intent of Congress is clear, court and agency must give it effect; if Congress is silent, question is whether agency's construction is permissible).

Even the EPA, in its Proposed Post–1987 Policy seems to acknowledge its responsibility to specify a date for revision of inadequate SIPs. Speaking of § 110(c)(1)(C), the EPA states:

> The EPA believes that this language [indicating the State's response to a SIP call should be submitted within 60 days "or such longer period as the Administrator may prescribe"] authorizes the Ad-

ministrator to prescribe any additional period for the State response that is reasonable in light of the circumstances.[17]

Implicitly, the EPA concedes that it is to prescribe a date by which the State must respond to the SIP call.

Finally, the conclusion that the Administrator must set a date certain for submission of the revised SIP finds support in interpretations of other provisions of the Clean Air Act. In *Natural Resources Defense Council, Inc. v. Train,* 545 F.2d 320 (2d Cir.1976), the court rejected the EPA's argument that the Administrator had discretion whether to list lead as a pollutant under § 108 of the Act, 42 U.S.C. § 7408(a), which provides that the Secretary "shall" publish a list of air pollutants and establish air quality standards for those pollutants which satisfy specified criteria, including a finding in the Administrator's judgment that the pollutant has an adverse effect on public health and for which the Administrator plans to issue air quality criteria. The EPA argued that the Administrator's duty to list substances was mandatory only for pollutants for which the Administrator planned to issue air quality criteria. The court, in concluding to the contrary, stated,

> [i]f the EPA interpretation were accepted and listing were mandatory only for substances for which [the Administrator] plans to issue air quality criteria ...', then the mandatory language of § 108(a)(1)(A) [that the Administrator shall publish a list] would become mere surplusage.

*Id.* at 325. Moreover, were the EPA's construction adopted and the Administrator thus able to avoid listing pollutants by deciding not to issue air quality criteria, "[t]he deliberate inclusion of a specific timetable for the attainment of ambient air quality standards ... would become an exercise in futility." *Id.* at 327.

Similarly, in the case at hand, if the Administrator had discretion to decide not only what date to set for revision of the plan, but also whether to set such a date, the deadlines for the air quality standards

---

**17.** 52 Fed.Reg. at 45,056.

and the requirement that the EPA issue regulations when the state fails to do would be frustrated.[18] *Cf. New England Legal Foundation v. Costle*, 475 F.Supp. 425, 432 (D.Conn.1979) (citing *Train* to support construction of § 110(c)(1)(C) as possibly imposing on Administrator duty to revise a SIP if the state fails to do so adequately after being put on notice), *modified*, 632 F.2d 936 (2d Cir.1980).

The reasoning and interpretation of *Train* are more appropriate to guide interpretation of § 110 than the body of law cited by the EPA interpreting § 113 of the Act. Section 113(a)(1) of the Clean Air Act, 42 U.S.C. § 7413(a)(1), provides in relevant part:

> Whenever ... the Administrator finds that any person is in violation of any requirement of an applicable implementation plan, the Administrator shall notify the person in violation of the plan and the State in which the plan applies of such finding.

In *City of Seabrook v. Costle*, 659 F.2d 1371, 1374 (5th Cir.1981), the court held that § 113 did not require the Administrator to make a finding, given the absence of "a clear statutory mandate" and "the tradition of broad prosecutorial discretion." The court even questioned whether the Administrator was required to issue a notice of violation if she or he found a violation, despite the use of the word "shall" in the statute, because such language is not always construed to be mandatory when used "in the traditional realm of prosecution." *Id.* at n. 3. *But see Council of Commuter Organizations v. Metropolitan Transp. Auth.*, 683 F.2d 663, 671–72 (2d Cir.1982) ("[E]PA has a non-discretionary duty to issue a notice of violation whenever

it determines that a violation has occurred.") (citations omitted).

Applying the logic of *Costle*'s statutory construction to the case at hand, it could be argued that § 110(c)(1)(C) need not be construed to require the EPA to set a date by which the SIP must be revised in order to give the language providing that the Administrator "shall" otherwise prepare and publish regulations effect. However, *Costle* and other constructions of § 113 should not guide the interpretation of § 110(c)(1)(C), because neither prosecution nor other sanctions is at issue. Interpreting § 110 to require the Administrator to set a date certain does no more than require the Administrator to act to ensure compliance with dates specified in the statute. Accordingly, for the reasons stated above, I conclude that § 110 imposes upon the Administrator a mandatory duty, upon finding a SIP substantially inadequate, to specify a date for its revision. The question then is whether, by conditioning completion of the SIP revision on adoption of the Post–1987 Policy, the EPA has fulfilled this mandatory duty.

 The Administrator clearly set a date certain by which New York State was to complete the first phase of the SIP revision process. The second phase, however, will be initiated by the issuance of the EPA's "final Post–1987 Policy or a new Clean Air Act, should Congress pass one before the end of the year." [19] Only in this phase will the EPA establish the date by which carbon monoxide and ozone air quality standards are to be attained and the date by which plans providing for compliance with that deadline are to be submitted, and only in response to the second phase will the

---

**18.** The EPA contends that a more recent case, distinguishing *Train*, provides more appropriate guidance for this case. In *Environmental Defense Fund v. Thomas*, No. 85–9507 (S.D.N.Y. April 19, 1988) [available on WESTLAW, 1988 WL 36332], the court held that the Administrator did not have a mandatory duty to revise the primary and secondary standards for sulfur oxides pursuant to § 109(d) of the Act, 42 U.S.C. § 7409(d), which provides that at five-year intervals the Administrator shall review the standards and "shall make such revisions ... as may be required." The court found that, although

the Administrator had a mandatory duty to review the criteria, the Administrator retained discretion to determine whether revisions were required. The Administrator's argument in *Thomas*, unlike in *Train*, was found to follow from the language of the statute and to find support in the section's legislative history. For the reasons discussed above, the same cannot be said of the Administrator's interpretation of § 110 in the case at hand.

**19.** June 14 letter at 1–2.

states be able "to complete revisions to the SIPs." [20]

Plaintiffs argue that, by linking initiation and completion of this phase to adoption of an EPA policy or Congressional action, the Administrator has failed to set a date certain within the meaning of the statute and thereby deferred action without statutory authorization. EPA maintains that Congress has not directly spoken to this precise question and thus has delegated to it as the administering agency the authority to choose how to proceed. *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

Plaintiffs look to *Abramowitz v. EPA,* 832 F.2d 1071 (9th Cir.1987) for support for their argument that the EPA lacks the statutory authority to defer action by making it contingent on a national response to the failure of states to attain the NAAQS for carbon monoxide and ozone. In *Abramowitz,* plaintiffs successfully challenged the propriety of EPA's approval of control measures in a revised SIP while deferring approval of the attainment demonstration. The court held that the EPA did not have discretion to do so in light of the statute's requirement that the SIP "shall provide for attainment" of national ambient air quality standards and case law holding that the EPA-approved plans are to provide for attainment of the air quality standards. 832 F.2d at 1071–72. Moreover, the court ordered the EPA to disapprove the relevant SIP provisions, rather than permitting it, as it requested, to defer approval or disapproval pending legislative relief because final action was not anticipated before the statutory deadline.

> [W]e do not believe that EPA has the discretion to ignore the statutory deadline. We are informed by counsel for both sides of their expectation that Congress will extend the deadline once again in the near future, but we must apply the

law as it now stands, not as it may become.

832 F.2d at 1079.

Plaintiffs also invoke *Friends of the Earth v. Carey,* 535 F.2d 165, 173 (2d Cir. 1976) for support for their request that the court "direct Federal Defendants to submit a proposed timetable, subject to comment by Plaintiffs, specifying how long Federal Defendants believe the state should take to file a revised plan and what the new attainment date should be in New York." [21] In *Friends,* the court rejected EPA's argument that it should not be ordered to enforce several strategies of the New York SIP given the existence of ongoing negotiations between the EPA, State, and City authorities to achieve consent decrees for carrying out the strategies at issue.

> Once a citizen suit to enforce an EPA approved state implementation plan has been properly commenced, the district court is obligated, upon a showing that the state has violated the plan, to issue appropriate orders for its enforcement. The court may not, over the plaintiff's objection, escape this obligation on the ground that the EPA is attempting to negotiate consent orders....

535 F.2d at 173. The court of appeals emphasized that, although achieving compliance through consensual means was desirable,

> the statute empowers neither the EPA nor the State to delay the approved Plan's strategies through negotiations, be they formal or otherwise. Negotiations are no substitute for enforcement and for timely compliance with the Plan's mandated strategies....

*Id.* at 178. In the case at hand, plaintiffs contend that the EPA must similarly be ordered to set a date certain by which the SIP must be revised. They maintain that the plans to promulgate a national policy, like the plans to negotiate a consent decree in *Friends* or to develop a legislative re-

---

20. May 26 letter at 2.

21. Plaintiffs' Memorandum of Law in Reply to Federal Defendants' Reply Memorandum of Law in Opposition to Plaintiffs' Motions for Summary Judgment, and in Further Support of Federal Defendants' Motion for Summary Judgment Dismissing Claims Nine, Ten and Eleven at 21 (November 6, 1987).

sponse in *Abramowitz*, cannot enable the EPA to escape its obligation.

Although *Abramowitz* and *Friends* are factually distinguishable from the case at hand, they do indicate the limitations on the Administrator's discretion to deviate from the Act's requirements. With the passage of the statutory deadline for the attainment of the NAAQS, the Act offers little guidance for the next course of action. It is reasonable for the EPA, in light of the deadline's passage, to seek to set a new deadline for the attainment of the carbon monoxide and ozone NAAQS and for that deadline to effect the nature and timing of the SIP revisions.

However, this course of action, no matter how reasonable it may be, is constrained by the statutory requirement that the EPA set a date certain for revision of SIPs found to be substantially inadequate. In this case, the EPA's own statements indicate the agency's intent to set such a date once the Policy is adopted or the Act amended; the statements have even included likely timetables indicating dates for SIP revision and attainment of the carbon monoxide and ozone NAAQS. The only problem is that the schedule is triggered by the adoption of the Policy or amendment of the Act, an event that has proven to be elusive thus far despite the diligent efforts of the EPA to initiate and refine its Post–1987 Policy. The EPA has been anticipating prompt adoption of the Policy for some time, but it still remains only a proposal.

Thus, the letter of May 26, by conditioning initiation of and a schedule for the second phase of the SIP revision process on the Policy, has failed to set a date certain by which the SIP will be revised. The SIP provisions for attainment of the NAAQS has been characterized as "the heart of the 1970 Amendments," *Train v. Natural Resources Defense Council*, 421 U.S. 60, 66, 95 S.Ct. 1470, 1475, 43 L.Ed.2d 731 (1975), and the deadlines for attainment are no less important now. Specification of a date certain for the revision of New York's SIP is a necessary step for advancement toward attainment of the NAAQS and thus further reduction of the pollutants in the air we breathe.

The court is sympathetic to the problems EPA faces, particularly in view of the complexity of the subject matter and the total uncertainty as to Congress' present intentions on the subject. Development of a policy that specifies new SIP requirements, that are reasonable yet move forward at a sufficient pace, requires careful deliberation, and a policy drawn hastily may add little to the advancement of the Act's goal to abate the emission of pollutants such as carbon monoxide and ozone that have proven particularly difficult to control.

Nevertheless, the language of the statute seems plain, as does the fact that EPA has not yet set a date certain for the revision of New York's SIP. Accordingly, EPA's motions for summary judgment on claims nine and ten of NRDC's action and claim two of ATURA's action are denied; NRDC's motion for summary judgment on claims nine and ten are granted.

Having said this, the court recognizes the necessity of dealing with the issues on a pragmatic basis. Accordingly, while the Administrator is hereby ordered to set a date certain for revision of the New York SIP, he shall be allowed a reasonable period of time in which to consider what date shall be set and the court will confer with the parties to determine what period of time shall be allowed.

■ Finally, the plaintiffs contend that the EPA's failure to fulfill its duties under § 110(c)(1)(C) promptly violates the APA on the ground that the agency has "unlawfully withheld and unreasonably delayed action." [22] As the above discussion indicates, although the agency has failed to perform a mandatory duty, it cannot be said that its delay is so unreasonable as to bring it within the scope of § 706. The EPA delay does not appear to be in bad faith, and the complexity of the issues and uncertainty as to the nature and timing of possible Con-

---

**22.** The EPA's argument that the court lacks subject matter jurisdiction under the APA on the ground that the claim involves a discretionary duty need not be addressed in light of the conclusion that the duty to set a date certain for the SIP revision is mandatory.

gress action, undoubtedly and reasonably accounts for some of this delay. Although issues of public health are concerned, those interests will not be advanced if the EPA simply sets a date for SIP revision without instructing New York in which ways the SIP is to be revised and if those instructions have not been carefully crafted to ensure that the SIP, revised accordingly, will actually ensure abatement of the pollutants' emission. Accordingly, the EPA's motions for summary judgment on claim eleven of NRDC's complaint and claim three of ATURA's complaint are granted, and NRDC's motion for summary judgment on claim eleven is denied.

It is so ordered.