**COALITION FOR CLEAN AIR, et al.**

v.

**ENVIRONMENTAL PROTECTION AGENCY.**

**No. CV88–4414–HLH.**

United States District Court, C.D. California.

Jan. 9, 1991.

Alan Waltner, Oakland, Cal., for plaintiffs.

Karen L. Egbert, Dept. of Justice, Washington, D.C., and Ian Fan, Asst. U.S. Atty., Los Angeles, Cal., for E.P.A.

Colin Lennard, Los Angeles, Cal., for SCAB.

Peter M. Greenwald, El Monte, Cal., for SCAQMD.

Henrietta Mosley, Los Angeles, Cal., for S.C. Gas Co.

R. Lannen, Rosemead, Cal., for S.C. Edison.

## ORDER

HUPP, District Judge.

The motion to vacate the settlement agreement and dismiss the action is granted. The action is dismissed.

The question is whether Congress, in enacting the 1990 amendments to the Clean Air Act (hereafter the "Act"), intended to require that a Federal Implementation Plan (FIP) prepared under the new criteria in the amended Act be promulgated by EPA before there is rejected for non-compliance with the Act by EPA a State Implementation Plan (SIP) hereafter to be prepared under the new criteria and timing schedules in the amended version of the Act.

Under the former version of the Act, the State's plan for the South Coast Air Basin (SCAB) was rejected (*Abramowitz v. United States Environmental Protection Agency*, 832 F.2d 1071) (9th Cir.1987) and EPA acquired the obligation under the former version of the Act to prepare a FIP. Plaintiffs brought this action to compel EPA to prepare the FIP. EPA recognized its obligation to do so, and an agreement was entered into, approved by the court on March 28, 1989, which set the date for promulgation of the FIP by EPA, since extended to Feb. 28, 1991. In September, 1990, EPA published in the Federal Register its tentative FIP for comment. However, Congress passed extensive amendments to the Act which were signed into law by the President on Nov. 15, 1990. The amendments to the Act change numer-

ous standards which States must meet, set forth new schedules for the submission of SIP's, and continues the provision that if the State fails to submit a plan, or a State SIP is disapproved, the EPA shall prepare a FIP (now, within 2 years of disapproval), or may instead approve a State proposed revision to the SIP (this latter provision is significant because it is clear that California continues to submit significant revisions to its rejected SIP to EPA, including the epochal 1989 plan developed by South Coast Air Quality Management District (SCAQMD)). Thus, the method of enforcement (a federal plan if the state does not come up with an acceptable one) is preserved from the former Act, but EPA has more time, opportunity, and flexibility to develop its own plan or approve State modifications. The difficulty presented by this motion is that Congress did not expressly say whether it intended to start the SIP process over again or not, and it is, therefore, in question whether it is Congress' intent in this circumstance that EPA must follow through on the presently pending FIP, even though the State has not had an opportunity to develop its own plan under the new criteria and schedules.

 It must be said that the statute is ambiguous. The court makes this determination not alone from the fact that both EPA and plaintiffs argue that the statute is crystal clear and unambiguous—their way. Amended § 110 provides in part that:

> "The Administrator shall promulgate a Federal implementation plan at any time within 2 years after the Administrator—
> ... (B) disapproves a State implementation plan in whole or in part ...".

Plaintiffs argue that there is no ambiguity here because the EPA disapproved the old SIP in 1988, and that the EPA plainly owes everyone concerned a FIP. What makes the language ambiguous, however, is that the legislation revamped the schedule for submission of SIPs, allowing time in the future to submit the same and plainly assumes that States which did not have approved SIPs, or imposed FIPs, at the date of the amendments to the Act, were to

submit them within the new timetables set forth in the Act. The question, then, is which rejected SIP is the revised § 110 now referring to—the one which was rejected in 1988 or the new one which must be submitted under the new criteria and on the new time schedule? The answer is not provided by a reading, literal or otherwise, of § 110. However, the structure of the amended Act, with revamped criteria and timing for SIPs, and with an obvious policy that the States are encouraged to take the lead, with the potential FIP to be the stick that drives them, is clear. There is an additional reason to believe that revised § 110 refers to the new SIP to be prepared by the States under the revised criteria. If the Act were interpreted otherwise, there would be the anomaly that the SIP prepared by the State under the former criteria and rejected is to be replaced by a FIP prepared under new criteria that the State has never had an opportunity to address. In view of Congressional policy to have States take the lead on preparation of plans, such an interpretation seems less likely than the contrary. From this, it is logical to conclude that the SIP referred to in § 110 is the new SIP required of the States and referred to in other amendments to the Act. The court so concludes.

The court is aided in reaching this result by the usual rule that an administrative agency's interpretation of ambiguous legislation is to be given heavy weight. (*Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694, 703 (1984).)

 The Congressional history is inconclusive. Plaintiffs point out that EPA strongly pushed revision of § 110 to make the FIP discretionary, or eliminate the requirement that one be promulgated on State failure, and that Congress expressly declined to adopt the EPA view. This circumstance appears irrelevant to the question posed on this motion to the court. There is no doubt at all that under the amended Act EPA must prepare a FIP on failure of a state to propose one meeting the requirements of the Act, but the ques-

tion which remains is to what SIP does the Act refer to in imposing this responsibility.

■ Plaintiffs (joined in this respect by SCAQMD) also argue that the "savings" clause, § 193, preserves the order of this court. That section provides that no "control requirement" in effect before the effective date of the 1990 amendments to the Act is to be modified afterward "unless the modifications insures equivalent or greater emission reductions of such air pollutant". It is apparently argued that the requirement that EPA promulgate a FIP is a "control requirement", or at least there would be requirements if the FIP were adopted. "Control requirement" is not defined in the Act, but the court thinks that the phrase cannot lend itself to the pending requirement that EPA propose a FIP or to the hypothetical contents of the FIP if one had been adopted before the amendments to the Act, for the reason that there is no present specification of the details of control of various sources of emission control. Thus, it is determined that § 193 does not affect the question at issue. In connection with the interpretation of § 193, the SCAQMD raises some troublesome concerns. SCAQMD notes some severe practical problems which will ensue if EPA does not move forward with a FIP which places limitations on sources of pollution beyond state control and exclusively subject to federal regulation (i.e., ships, aircraft, autos made for sale in the other 49 states, etc., referred to generally as "federal pollution"). It is asserted (without any apparent contradiction) that control of such sources is a prerequisite if the ambient air standards are to be met at all, and that even if the revised SIP presently pending before the EPA is fully implemented, this federal component can only be regulated by EPA. Thus, in SCAQMD's view, a FIP is a necessity even though SIP modifications presently proposed by the State may take care of pollution sources within state control. This concern is troublesome because Congress does not appear to have dealt with it at all. The Congressional plan is to require States to adopt an SIP, and does not appear to recognize, at least in the statute, that Federal controls may also be

necessary, although there is a new provision giving EPA permission to issue a partial FIP to fill in the gaps in a state SIP. Presumably, this provision could be used to cover "federal pollution", but § 193 does not require this type of FIP to be issued at this time, as urged by SCAQMD. The requirement that a FIP be adopted is only triggered by an inadequate SIP. SCAQMD contemplates a coordinated State and Federal plan. It argues that § 193 should be interpreted at least to require EPA to adopt now the necessary Federal part of the plan even though further SIPs may be developed on the delayed schedule allowed by Congress. This view is supported by quotations from Senators Chaffee and Baucus, which assert somewhat ambiguously that § 193 means substantially that. The difficulty is that the statute failed to incorporate anything close to what the senators apparently thought was in the Act. § 110 was left virtually and ambiguously untouched, and the savings clause says nothing about EPA's obligation to adopt a FIP for Federal sources of pollution while letting the states proceed on their revised SIPs.

Senator Baucus was Chairman of the Conference Committee which resolved the differences between the House and Senate versions. His commentary, while apparently not a formal committee report, thus has somewhat more relevance to Congress' intent than would a stray statement made in floor debate by an individual Senator. He said:

> "We do not intend that this savings clause [§ 193] requires EPA to finalize the state's and regional air quality planning that is ongoing in the Los Angeles area and will otherwise be required under this legislation. If EPA were to promulgate complete new plans based on the requirements of the old Act, the area subject to those federal plans would be deprived of the opportunity to use the significantly revised and clearly more workable requirements of the new legislation. We agree that this would be unreasonable, particularly since the proposed FIP fails to recognize the critical

role that local governments play in reducing transportation-related emission.

The savings clause provides EPA with significant discretion with respect to FIPs in California. EPA has the obligation to adopt control measures for sources which it exclusively controls [i.e., "federal pollution"] when those controls are necessary to help attain national standards or meet other requirements of the Act but, beyond that, EPA should complete ongoing FIP processes only for the purposes of ensuring that the standards are met by the statutory deadlines."

The statement of Senator Chaffee in answer to the questions of Senator Wilson on the Senate floor was to the same effect. The statement is moderately clear until one comes to the second paragraph. The amended Act does not appear to have told EPA to go ahead and adopt a FIP for "federal pollution" while waiting for the state to finish the revised SIP. The first paragraph makes it clear, however, that the savings clause (and, by implication, § 110) does not require EPA to develop an entire new FIP until the State proposes a revised SIP. SCAQMD suggests that this statement be used to interpret the savings clause as requiring EPA to promulgate a FIP on federal sources of pollution while continuing to work on the State SIP for state sources. The language used, however, is not susceptible to this interpretation, and this approach, even if considered desirable, is not required by the amended Act.

All parties verbally accept the axiom that this court may not make policy. In this they are correct; the court may do only what it believes Congress has authorized or required, even though the parties and it may have other ideas as to what Congress should have done. The court must disregard the occasional and tempting invitations of the parties to construe the legislation to achieve what is believed to be desirable ends. As best the court can interpret the intentions of Congress, the EPA does not now have to proclaim a FIP.

The motion is granted. EPA is to submit forthwith an order vacating the settlement agreement and order and dismissing the action.